IN THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN THOMSON, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CASE NO. 1:23-cv-00099-SEB-MG |
| | : | |
| ROCHE DIAGNOSTICS CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.  INTRODUCTION**

Plaintiff John Thomson ("Plaintiff") worked for Defendant Roche Diagnostics Corporation ("Defendant") for over forty years before he retired in January 2023.  After he retired, he filed a lawsuit in state court in Indiana, which was removed to this Court alleging that Roche under paid his Incentive Compensation Plan (hereinafter "ICP") bonus in years 2018 through 2021.  Subsequently, Plaintiff amended his Complaint to allege underpayment of the 2022 ICP.

The governing document of Roche's ICP, is RDC-107, Roche's Sales and Service Incentive Compensation Plan Policy (hereinafter "ICP Policy")(Doc.# 32).  The ICP Policy contains essential terms supplementing the ICP, including procedures for disputing payments made under the ICP. Specifically, the ICP Policy required Plaintiff to submit any disputes concerning correct calculations in writing within forty-five (45) days of the calendar year end payout. (ICP Policy Section 4.0). Plaintiff was also required to submit any disputes regarding whether Plaintiff was compensated correctly pursuant to the ICP to Plaintiff's direct manager "through the Payout Exception Process."  (ICP Policy, Section 10.6).  Plaintiff did not submit any dispute concerning the payments he received from 2018-2022 pursuant to the ICPs in writing

within the forty-five day period, and he did not submit a Payout Exception Process addressing any of his disputes with the compensation paid to him under the ICPs. The relevant terms of the ICP Policy are unambiguous. Accordingly, the Court should enforce the unambiguous terms of the ICP Policy, find that Plaintiff is barred from bringing his claims because he failed to follow the dispute resolution procedures in the ICP Policy, and judgment should be entered in favor of Defendant.

In the alternative, if the Court does not find that the ICP Policy bars Plaintiff's Amended Complaint in its entirety, all of Plaintiff's claims that accrued before December 22, 2020 are outside the applicable two-year statute of limitations contained in I.C. § 34-11-2-1, and should be dismissed with prejudice.

## II.     RELEVANT PLEADINGS

Plaintiff filed a Complaint in state court in Indiana on December 22, 2022, which was removed to this court on January 17, 2023. (Doc. # 1). This Court has jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. §1332. (Doc. #27 at ¶¶ 1-3 (hereinafter "Amended Complaint at _")) Plaintiff worked for Defendant for over forty years; his employment ended in January 2023, when he retired. (Amended Complaint at ¶¶ 4, 6) At all relevant times, Plaintiff worked as a Corporate Accounts employee in a sales position. (Amended Complaint at ¶ 5). In addition to his base salary, Plaintiff was eligible for compensation through Defendant's ICP and ICP Policy. (Amended Complaint at ¶ 7), (Doc. # 31 at ¶ 7, (hereinafter "Answer at _")), and (Doc. 32). Plaintiff asserted five counts of breach of contract based on the ICPs. (Amended Complaint at ¶¶ 23-69, Ex. A-E). Plaintiff also asserts violations of Indiana's Wage Payment Statute, Ind. § 22-2-5-2, et seq., for years 2020-2022. (Amended Complaint ¶¶ 70-77). The ICP Policy contains express provisions and time deadlines for employees to follow to raise disputes concerning the compensation they receive under the ICP. (See, ICP Policy, §§ 4.0, 10.3, and 10.6). Plaintiff did

not submit a Payout Exception Process as required by the unambiguous terms of the ICP Policy and failed to timely submit a written dispute concerning the compensation he received under the ICP and ICP Policy for years 2018-2022. (See Amended Complaint).

### III. ARGUMENT

#### A. Standard Of Review.

Fed. R. Civ. P. 12(c) provides that, once "the pleadings are closed," a party may "move for judgment on the pleadings." The Seventh Circuit applies the same standard to a Rule 12(c) motion for judgment on the pleadings as to a motion to dismiss under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727-28 (7th Cir. 2014) (citing *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007)).

Distinctly from a motion to dismiss under Rule 12(b)(6), the Court may consider "the complaint, the answer, and any written instruments attached as exhibits" when assessing a motion under Rule 12(c). *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)); *see also Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"). The district court's decision on a 12(c) motion is reviewed *de novo*. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007).

A court evaluating a Rule 12(c) motion must consider the United States Supreme Court's requirement that plaintiffs state specific facts amounting to a plausible claim, as held in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See Estate of Allen v. CCA of Tenn., LLC*, S.D. Ind. Case No. 1:08-cv-0774-SEB-TAB, 2009 U.S. Dist. LEXIS 60015 (July 14th, 2009). Accordingly, all facts alleged in the complaint are taken as true, and all reasonable inferences are drawn in favor of the plaintiff. *Thomas v. Guardsmark, Inc.*, 381

F.3d 701, 704 (7th Cir. 2004).

**B.** **<u>Plaintiff is Barred by the Unambiguous Terms of the ICP Policy From Bringing this Lawsuit Alleging Improper Payments Under the ICP Because He Failed to Follow the Dispute Resolution Terms of the ICP Policy</u>**

In an action based on diversity jurisdiction, state law supplies the substantive law. *Erie RR v. Tompkins*, 304 US 64 (1938). In a diversity case, the rules of contract interpretation are treated as substantive law. *A.M. Int'l Inc. v. Graphic Management Assoc. Inc.*, 44 F.3d 572, 576 (7th Cir. 1995). Plaintiff alleges in his Amended Complaint that the ICPs are contracts. (Complaint at ¶¶ 24, 32, 41, 51, 61). It is well settled that a contract can consist of multiple documents and be composed of both oral and written terms. *Knutson v. UGS Corp.*, 526 F.3d 339, 340 (7th Cir. 2008); See 4 Corbin on Contracts §23.3 (Mathew Bender). Indiana courts have a long history in recognizing the freedom of parties to enter contracts and presume that a contract is the freely bargained for agreement between the parties. *Trimble v. Ameritech Publ'g*, 700 N.E.2d 1128, 1129 (Ind. 1998). The goal of contract interpretation is to ascertain the intent of the parties as set forth by the language of the agreement. *Reuille v. E.E. Brandenberger Contr., Inc*. 888 N.E.2d 770, 771 (Ind. 2008). If the contract language is unambiguous, it must be given its plain and ordinary meaning. *Cabanaw v. Cabanaw*, 648 N.E.2d 694, 697 (Ind. Ct. App. 1995). An unambiguous contract is generally a matter of law and can be resolved by a court by reference to a paper record. *Tesler v. Miller/Howard Invs., Inc.*, 2019 U.S. Dist. LEXIS 32831 (S.D. Indiana, March 1, 2019) (citing, *In re Indiana State Fair Litigation*, 49 N.E.3d 545, 548 (Ind. 2016); *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577 (Ind. 2013)).

The ICPs (Exs. A-E of the Amended Complaint) are not stand alone contracts. The ICP Policy is the governing document of the ICP and contains essential and controlling terms of the

4

parties' ICP agreement. Section 1.0 of the ICP Policy clearly states that it applies to employees participating in sales and services, which would include Plaintiff:

> This is a statement of the policy of Roche Diagnostics Corporation (RDC), Roche Diagnostics Operations, Inc. (RDO), Roche Diabetes Care, Inc. and GenMark Diagnostics, Inc. (collectively "Roche" or the "Company") and covers employees participating in sales and service incentive compensation plans.

Section 4.0 of the ICP Policy states:

> Employees on ICP are responsible for reviewing and confirming the accuracy of their Incentive and bonus payments. Within 45 days after the final calendar year-end payout, an employee can bring forward, in writing, any discrepancies in calculations for consideration. After the 45-day period following the calendar year final payout, if no issues have been raised by the employee or Roche, the calculation and payment are considered final, subject to the Exception procedure set forth in Section 10.3 of this policy.

Section 10.6 of the ICP Policy contains dispute resolution procedures that the Plaintiff was required to follow to resolve disputes regarding whether Plaintiff was appropriately compensated pursuant to the ICPs. Specifically, the ICP Policy required Plaintiff to submit any disputes regarding whether Plaintiff was correctly compensated pursuant to the ICP to Plaintiff's direct manager "through the Payout Exception Process." (ICP Policy §10.6) It is clear that these terms in the ICP Policy are essential terms of the agreement between the parties and that Plaintiff consented to the terms of the ICP Policy by continuing to work for Roche after receiving payment under the ICP and ICP Policy. See *Carroll v. Stryker Corp.*, 658 F.3d 675, 683 (7th Cir. 2011). Plaintiff is not entitled to pick and choose the provisions of the agreement he wishes to enforce and ignore other terms contained in the agreement between the parties. Section 4 of the ICP Policy is unambiguous and expressly states that if the employee has not asserted a dispute in writing within the 45 day period following the calendar year-end payout, the calculation and the payout are final. It is clear from Plaintiff's Amended Complaint that he did not follow the procedure required by the ICP Policy in §§ 4.0 and 10.6 to dispute any of his ICP payments for years 2018-

5

2022, but instead, he simply waited until he retired and filed a lawsuit. The unambiguous terms of the ICP Policy, to which Plaintiff was bound, clearly made the compensation Plaintiff received under the ICP for years 2018-2022 final after the forty-five day period set out in Section 4.0. The ICP Policy bars Plaintiff from brining a lawsuit against Defendant for alleged underpayments of the ICPs for years 2018-2022 because he did not timely dispute the ICP compensation he received during his employment and because he did not submit a Payout Exception as required by the ICP Policy. See *Trimble v. Ameritech Publ'g*, 700 N.E.2d 1128, 1129-1130 (Ind. 1998)(holding as enforceable exculpatory clauses that limit liability); *Am. Gen. Fin. Mgmt. Corp., v. Watson*, 822 N.E.2d 253, 257-258 (Ind. Ct. App. 2005)(enforcing a dispute resolution clause contained in an employment application); *Novotny v. Renewal by Anderson Corp.*, 861 N.E.2d 15, 22 (Ind. Ct. App. 2007)(recognizing the freedom to contract and enforcing an agreement to arbitrate disputes).

    **C.**    **Plaintiff's Claims For Underpayments Under the ICPs That Accrued Prior to December 22, 2020 Are Barred by the Applicable Statute of limitations**

If the Court does not grant Defendant's Motion for Judgment on the Pleadings as to all counts of Plaintiff's Amended Complaint based upon the facts and argument asserted in section B of this memorandum, the Court should grant Defendant's motion against all claims that accrued before December 22, 2020. In Count I-III of the Amended Complaint, Plaintiff alleges Defendant breached the ICP for years 2018, 2019 and 2020 by not paying him all of the money he was entitled to under the KSO portion of the ICPs. In Count VI of his Amended Complaint, Plaintiff alleges Defendant violated Indiana's Wage Payment Statute by allegedly under paying the KSO portion of the ICP in 2020. The KSO component was paid out semi-annually based on year to date performance. (Ex. A-C, Amended Complaint). Indiana has a two-year statute of limitations that applies to Plaintiff's claims in his Amended Complaint:

> "an action relating to the terms conditions, and privileges of employment except actions based upon a *written contract* (including, but not limited to, hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary) must be brought within two (2) years of the date of the act or omission complained of." I.C. § 34-11-2-1 (emphasis added).

The courts in Indiana have held that the exception for a "written contract" referred to in I.C. § 34-11-2-1 means a written employment contract. *Knutson v. UGS Corp.*, 526 F.3d 339, 340 (7th Cir. 2008)(citing, *Kemper v. Warren Petroleum Corp.*, 451 N.E. 2d 1115 (Ind. Ct. App. 1983), other citations omitted). In *Knutson*, plaintiff brought an action based on a written compensation plan and alleged that the defendant breached the compensation plan by not paying him the correct amount of commissions. *Id*. at 340. Plaintiff argued that breach of the compensation plan constituted a breach of a "written contract" and that the longer contract statute of limitations applied. *Id*. Although the court recognized that the compensation plan was written, it rejected Plaintiff's argument and relied on the weight of authority that held the compensation plan was not a *written employment contract* and that the two year statute of limitations in I.C. § 34-11-2-1 barred Plaintiff's claims. *Id*. at 341.

This Court granted a defendant's partial motion to dismiss plaintiff's claims for breach of contract for alleged underpayment under a disability plan because the claims were beyond the two year statute of limitations in I.C. § 34-11-2-1. *Allen v. Lilly Extended Disability Plan*, 2017 U.S. Dist. LEXIS 231753 (S.D. Ind.). This Court found that the disability plan was not a "written employment" contract and that the exception in the two year statute did not apply. *Id.* at *8-9 and citing, *Knutson*, 526 F.3d at 339; *Cobb*, 2013 U.S. Dist. LEXIS 80212. Under Indiana law a valid and enforceable employment contract must contain four elements: (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; and (4) the

7

compensation the employee is to receive. *Id*. at *8, citing *Knutson v . UGS*, No. 1:05CV1319 SEBTAB, 2007 U.S. Dist. Lexis 52876 (S.D. Ind. July 19, 2007).

The ICPs for years 2018-2020, do not satisfy the four requirements necessary to constitute a written employment contract under Indiana law. The ICP specifically states that it is not a guarantee of employment to any plan participant for any period of time. (Exs. A-C, Amended Complaint).  Further, neither the ICP nor the ICP Policy explain the nature of services Plaintiff was to provide.  Thus, at a minimum, neither the second nor third element of the test exists to render the incentive compensation plan and policy a written employment contract under I.C. 34-11-2-1. *Kemper v. Warren Petroleum Corp; Knutson v. UGS Corp.; Allen v. Lilly Extended Disability Plan; Tesler v Miller/Howard Invs., Inc.,*. 2019 U.S. Dist LEXIS 32831, *11 (S.D. Indiana, March 1, 2019).

A statute of limitations begins to run when the cause of action accrues. *Shideler v. Dwyer*, 417 N.E.2d 281, 285 (Ind. 1981). Under I.C. § 34-11-2-1, an action must be brought within two years of the act or omission complained of.  Plaintiff's causes of action based on the ICP for years 2018-2020 would thus accrue when the alleged underpayments were made.  The ICP for years 2018-2020, state that the KSO portion of the plan is paid out semi-annually.  It is clear that all payments made under the ICP for 2018 and 2019 would be beyond the two year statute of limitations at the time Plaintiff filed his initial complaint. Thus, Count I and Count II of Plaintiff's Amended Complaint are barred by the applicable statute of limitations.  Additionally, all payments made under the 2020 ICP prior to December 22, 2020 were made outside the limitations period, and therefore, under Count III and Count VI at least the first semi-annual payment of the KSO portion of the ICP would be barred by the limitations period.

## IV. CONCLUSION

Based on the above-cited arguments and authorities, Plaintiff is barred from bringing any of the claims asserted in the Amended Complaint because he failed to follow the unambiguous dispute resolution procedures in the ICP Policy and, therefore, judgment should be entered in favor of Defendant, and this matter should be terminated. In the alternative, should the Court not grant judgment on all claims and terminate this action, the Court should dismiss all causes of action that accrued before December 22, 2022.

Respectfully submitted,

*/s/ John D. Meyer*
John D. Meyer, Atty. No. 18790-29
Lewis Brisbois Bisgaard & Smith, LLP
50 E. 91st Street, Suite 104
Indianapolis, IN  46240
Phone: (317) 324-4756/Fax: (317) 542-5207
John.Meyer@lewisbrisbois.com

David A. Campbell (Ohio Bar #0066494)
Pro Hac Vice Approved
Lewis Brisbois Bisgaard & Smith, LLP
1375 East Ninth Street
Suite 2250
Cleveland, OH 44114
Phone: (216) 298-1262
Fax: (216) 344-9421
david.a.campbell@lewisbrisbois.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April 2023, the foregoing was filed through the Court's CM/ECF electronic filing system.  A copy of this filing will be sent to all parties through the court's ECF system.

*/s/ John D. Meyer*
John D. Meyer