UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN THOMSON, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:23-CV-00099-SEB-MG |
| ROCHE DIAGNOSTICS CORPORATION, | ) |
| Defendant. | ) |

**PLAINTIFF JOHN THOMSON'S
SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff John Thomson ("Thomson"), by counsel, for his Second Amended Complaint for damages against Defendant Roche Diagnostics Corporation and Demand for Jury Trial, hereby alleges and states the following:

**I.  PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff John Thomson is a Georgia citizen and resident, and he resides in Roswell, Georgia.

2. Defendant Roche Diagnostics Corporation is an Indiana Domestic Limited Liability Company with its principal place of business in, and is a citizen of, Marion County, Indianapolis, Indiana.

3. This court has diversity jurisdiction under 28 U.S.C. §1332.

**II.  FACTUAL BACKGROUND**

4. Thomson worked for Roche for more than 43 years, beginning in 1979.

5. On or about January 21, 2010, Roche promoted Thomson to National Segment Sales Director. Roche and Thomson executed an agreement memorializing the terms of his employment. (**Exhibit A, 2010 Employment Agreement**).

1

6.  Following his promotion to National Segment Sales Director, pursuant to the terms of the 2010 Employment Agreement, Thomson was eligible to participate in Roche's Incentive Program as part of his compensation structure. (**Exhibit A**).

7.  On or about January 13, 2012, Roche promoted Thomson to National Director of Group Purchasing. Roche and Thomson executed an agreement memorializing the terms of his employment. (**Exhibit B, 2012 Employment Agreement**).

8.  Thomson remained eligible to participate in Roche's Incentive Program as part of his compensation structure, pursuant to the terms of the 2012 Employment Agreement. (**Exhibit B**).

9.  Thomson's title later changed from National Director of Group Purchasing to Corporate Accounts Director. Thomson's duties remained substantially the same and he remained eligible to participate in Roche's Incentive Program as part of his compensation structure pursuant to the terms of his Employment Agreement with Roche. (**Exhibit B**).

10. Roche continued to employ Thomson as a Corporate Accounts Director until Thomson's retirement on January 16, 2023.

11. At all relevant times, Roche employed Thomson as a Roche Corporate Accounts employee in a field sales position, and Thomson was eligible to participate in Roche's Incentive Program as part of his compensation structure.

12. In Fiscal Years 2018 through 2022, Thomson's pay structure included a fixed salary component and an incentive compensation component.

13. In Fiscal Years 2018 through 2022, the incentive compensation component of Thomson's pay structure was memorialized in a written Incentive Compensation Plan ("ICP").

(**Exhibit C, 2018 ICP; Exhibit D, 2019 ICP; Exhibit E, 2020 ICP; Exhibit F, 2021 ICP; Exhibit G, 2022 ICP**).

14. Thomson timely electronically signed each ICP in Fiscal Years 2018, 2019, 2020, 2021, and 2022.

15. Each ICP in Fiscal Years 2018, 2019, 2020, 2021, and 2022 included a Total Target Incentive Opportunity, which could be achieved by meeting plan objectives. (**Exhibits C, D, E, F, and G**).

16. Each ICP in Fiscal Years 2018, 2019, 2020, 2021, and 2022 included Key Sales Objectives ("KSOs"), a semi-annual payout based on standalone performance. (**Exhibits C, D, E, F, and G**).

17. The ICPs for Fiscal Years 2020, 2021, and 2022 also included a Balanced Plan Performance Accelerator, which could be achieved at 101% Revenue and at or above 115% KSO. (**Exhibits E, F, and G**).

18. Pursuant to each ICP for Fiscal Years 2018-2022, Roche was required to create KSOs with "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products." (**Exhibits C, D, E, F, and G**).

19. Each ICP for Fiscal Years 2018-2022 requires that all KSOs must be submitted and signed-off by March 31 of the plan year, and sign-off must be completed by the next level line manager and HR Business Partner. (**Exhibits C, D, E, F, and G**).

20. Jason Fowler ("Fowler"), Thomson's direct manager, failed to timely develop KSOs for Thomson by March 31 for Fiscal Years 2018, 2019, 2020, 2021, and 2022.

21. Fowler did not provide any "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products" for Thomson for Fiscal Years 2018, 2019, 2020, 2021, and 2022.

22. Fowler failed to measure any KSO metrics for Thomson for Fiscal Years 2018, 2019, 2020, 2021, and 2022.

23. Ron DiNizo ("DiNizo"), Vice President of Corporate Accounts, was Fowler's next level line manager in Fiscal Years 2018, 2019, 2020, 2021, and 2022.

24. DiNizo failed to timely approve written KSOs for Thomson in Fiscal Years 2018, 2019, 2020, 2021, and 2022.

25. Pursuant to the ICPs for Fiscal Years 2018, 2019, 2020, 2021, and 2022, Thomson was eligible to be paid more than 100% of the Total Target Incentive Opportunity if he exceeded his KSO target, subject to a percentage cap that varied from year to year.

26. For Fiscal Years 2018, 2019, 2020, 2021, and 2022, Roche retroactively generated KSOs for Thomson and arbitrarily calculated and paid Thomson's Total Target Incentive Opportunity.

27. Roche arbitrarily paid Thomson's Total Target Incentive Opportunity at 100% of the KSO for Fiscal Years 2018, 2020, and 2021.

28. Roche arbitrarily paid Thomson at less than 100% of the Total Target Incentive Opportunity for Fiscal Year 2019, reasoning that Mr. Thomson did not meet his KSO target.

29. Roche arbitrarily paid Thomson at 103% of the Total Target Incentive Opportunity for Fiscal Year 2022.

30. For Fiscal Years 2018, 2019, 2021, and 2022, the retroactively generated KSOs did not include "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

31. Upon information and belief, other Roche employees in Thomson's group received the maximum Total Annual Incentive Opportunity payout in Fiscal Years 2018-2022.

32. Upon information and belief, Thomson's sales numbers were as good, or better, than his other colleagues in his group who received the maximum Total Annual Incentive Opportunity payouts in Fiscal Years 2018-2022.

33. Had Roche properly and timely developed and communicated KSOs to Thomson in Fiscal Years 2018, 2019, 2020, 2021, and 2022, Thomson's would have been able to measure his performance against those goals.

34. Had Roche properly and timely developed and communicated KSOs to Thomson in Fiscal Years 2018, 2019, 2020, 2021, and 2022, Thomson's work performance would have warranted the maximum payout under the ICP for both KSOs and Balance Plan Accelerators.

35. For Fiscal Years 2018 through 2022, Thomson requested documentation showing how his KSO percentages were determined.

36. Roche provided only vague summary descriptions of how Thomson's KSO percentages were purportedly calculated, such as "strategic engagement with GPO & Key Members" and "engagement with local sales teams, utilization of Roche resources."

37. Roche's purported KSO metrics did not include "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

5

38. Because Roche failed to provide Thomson with any measurable basis for its calculations of his KSO payouts for Fiscal Years 2018 through 2022, Thomson was unable to review the accuracy of his incentive payments after the final ICP payout for each Fiscal Year.

39. Thomson timely complained about the arbitrary determination of the KSOs and ICP payouts for Fiscal Years 2018, 2019, 2020, 2021, and 2022 to DiNizo and/or Fowler.

40. Thomson timely disputed Roche's failure to provide measurable KSOs for Fiscal Years 2018 through 2022.

41. Thomson timely disputed the calculation of his KSO percentages for Fiscal Years 2018 through 2022.

42. Thomson was not required to comply with any dispute resolution procedures applicable to his ICPs because Roche prevented him from doing so by refusing to provide any measurable basis for his KSO percentage calculations.

43. After Thomson communicated his concerns about Roche's failure to provide measurable KSO metrics, and its arbitrary determination of his KSO percentages, Roche did not initiate any process to adjust Thomson's KSO percentages or ICP payouts for Fiscal Years 2018, 2019, 2020, 2021, and 2022.

44. Thomson has not received any information from Roche about how his KSO percentages were measured or calculated for Fiscal Years 2018, 2019, 2020, 2021, and 2022, despite repeated requests.

45. Thomson has not received the compensation that Roche owes him pursuant to the ICPs for Fiscal Years 2018, 2019, 2020, 2021, and 2022.

46. Thomson has requested that Roche provide him with the compensation it owes him. Roche has refused to do so.

### III.     LEGAL CLAIMS

### COUNT I:     BREACH OF CONTRACT – 2018 ICP

47. Thomson incorporates by reference all other paragraphs of this Second Amended Complaint as if fully set forth here.

48. Thomson had a valid written employment contract with Roche in Fiscal Year 2018. (**Exhibit B**).

49. The 2018 ICP was incorporated into Thomson's employment contract. (**Exhibit C**).

50. Pursuant to the 2018 ICP, Thomson was eligible to be paid up to $62,400.00 upon meeting 150% of his 2018 KSO target. (**Exhibit C**).

51. Thomson fulfilled his duties under the 2018 ICP.

52. For Fiscal Year 2018, Roche arbitrarily determined that Thomson met 100.4% of his 2018 KSO target.

53. Thomson could not dispute the 2018 KSO percentage calculation, because Roche never provided Thomson with any basis for its calculation.

54. For Fiscal Year 2018, Roche paid Thomson a total target KSO payout of $41,766.00 over two paychecks, each paid on or about August 15, 2018, and February 15, 2019.

55. Roche breached the 2018 ICP by, including but not limited to, failing to timely develop KSOs for 2018.

56. Roche breached the 2018 ICP by, including but not limited to, failing to develop KSOs that were "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

57. Roche breached the 2018 ICP by, including but not limited to, failing to timely approve KSOs for 2018.

58. Roche breached the 2018 ICP by, including but not limited to, failing to pay Thomson's full KSO payout earned under the 2018 ICP.

59. Thomson has suffered damages as a result of Roche's breach of the 2018 ICP in the amount of $20,634.00.

## COUNT II:   BREACH OF CONTRACT – 2019 ICP

60. Thomson incorporates by reference all other paragraphs of this Second Amended Complaint as if fully set forth here.

61. Roche and Thomson had a valid written employment contract with Roche in Fiscal Year 2019. (**Exhibit B**).

62. The 2019 ICP was incorporated into Thomson's employment contract. (**Exhibit D**).

63. Pursuant to the 2019 ICP, Thomson was eligible to be paid up to $62,400.00 upon meeting 150% of this 2019 KSO target. (**Exhibit D**).

64. Thomson fulfilled his duties under the 2019 ICP.

65. For Fiscal Year 2019, Roche arbitrarily determined that Thomson met 90.5% of his 2019 KSO target.

66. Thomson could not dispute the 2019 KSO percentage calculation, because Roche never provided Thomson with any basis for its calculation.

67. For Fiscal Year 2019, Roche paid Thomson a total target KSO payout of $37,648.00 over two paychecks, each paid on or about August 15, 2019, and February 15, 2020.

68. Roche breached the 2019 ICP by, including but not limited to, failing to timely develop KSOs for 2019.

69. Roche breached the 2019 ICP by, including but not limited to, failing to develop KSOs that were "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

70. Roche breached the 2019 ICP by, including but not limited to, failing to timely approve KSOs for 2019.

71. On information and belief, Fowler arbitrarily based Thomson's 2019 KSO payout in part upon a conflict between Thomson and Fowler, rather than any objective measures of performance.

72. Roche breached the 2019 ICP by, including but not limited to, failing to pay Thomson's full KSO payout earned under the 2019 ICP.

73. Thomson has suffered damages as a result of Roche's breach of the 2019 ICP in the amount of $24,752.00.

## COUNT III: BREACH OF CONTRACT – 2020 ICP

74. Thomson incorporates by reference all other paragraphs of this Second Amended Complaint as if fully set forth here.

75. Roche and Thomson had a valid written employment contract with Roche in Fiscal Year 2020. (**Exhibit B**).

76. The 2020 ICP was incorporated into Thomson's employment contract. (**Exhibit E**).

77. Pursuant to the 2020 ICP, Thomson was eligible to be paid up to $18,750.00 upon meeting 125% of this 2020 KSO target. (**Exhibit E**).

78. Thomson fulfilled his duties under the 2020 ICP.

79. For Fiscal Year 2020, Roche arbitrarily determined that Thomson met 100% of his 2020 KSO.

80. Thomson could not dispute the 2020 KSO percentage calculation, because Roche never provided Thomson with any basis for its calculation.

81. For Fiscal Year 2020, Roche paid Thomson a total target KSO payout of $15,000.00 over two paychecks, each paid on or about August 15, 2020, and February 15, 2021.

82. Roche breached the 2020 ICP by, including but not limited to, failing to timely develop KSOs for 2020.

83. Roche breached the 2020 ICP by, including but not limited to, failing to timely approve KSOs for 2020.

84. Roche breached the 2020 ICP by, including but not limited to, failing to develop KSOs that were "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

85. Roche breached the 2020 ICP by, including but not limited to, failing to pay Thomson's full KSO payout earned under the 2020 ICP.

86. Pursuant to the 2020 ICP, Thomson was eligible to be paid up to a $30,000.00 Balanced Plan Performance Accelerator, by achieving 101% Revenue and 115% or above in KSO score for the year.

87. Because Roche arbitrarily determined that Thomson met 100% of his 2020 KSO score, it failed to pay him any 2020 Balanced Plan Performance Accelerator for Fiscal Year 2020.

88. Thomson has suffered damages as a result of Roche's breach of the 2020 ICP in the amount of $33,750.00.

**COUNT IV: BREACH OF CONTRACT – 2021 ICP**

89. Thomson incorporates by reference all other paragraphs of this Second Amended Complaint as if fully set forth here.

90. Roche and Thomson had a valid written employment contract with Roche in Fiscal Year 2021. (**Exhibit B**).

91. The 2021 ICP was incorporated into Thomson's employment contract. (**Exhibit F**).

92. Pursuant to the 2021 ICP, Thomson was eligible to be paid up to $37,500.00 upon meeting 125% of this KSO target. (**Exhibit F**).

93. Thomson fulfilled his duties under the 2021 ICP.

94. For Fiscal year 2021, Roche arbitrarily determined that Thomson met 100% of his 2021 KSOs.

95. Thomson could not dispute the 2021 KSO percentage calculation, because Roche never provided Thomson with any basis for its calculation.

96. For Fiscal Year 2021, Roche paid Thomson a total target KSO payout of $30,000.00 over two paychecks, each paid on or about August 15, 2021, and February 15, 2022.

97. Roche breached the 2021 ICP by, including but not limited to, failing to timely develop KSOs for 2021.

98. Roche breached the 2021 ICP by, including but not limited to, failing to timely approve KSOs for 2021.

99. Roche breached the 2021 ICP by, including but not limited to, failing to develop KSOs that were "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

100. Roche breached the contract by, including but not limited to, failing to pay Thomson's KSO payout earned under the 2021 ICP.

101. Pursuant to the 2021 ICP, Thomson was eligible to be paid up to a $35,000.00 Balanced Plan Performance Accelerator, by achieving 101% Revenue and 115% or above in KSO score for the year.

102. Because Roche arbitrarily determined that Thomson met 100% of his 2021 KSO score, it failed to pay him any Balanced Plan Performance Accelerator for Fiscal Year 2021.

103. Thomson has suffered damages as a result of Roche's breach of the 2021 ICP in the amount of $42,500.00.

### COUNT IV: BREACH OF CONTRACT – 2022 ICP

104. Thomson incorporates by reference all other paragraphs of this Second Amended Complaint as if fully set forth here.

105. Roche and Thomson had a valid written employment contract with Roche in Fiscal Year 2022. (**Exhibit B**).

106. The 2022 ICP was incorporated into Thomson's employment contract. (**Exhibit G**).

107. Pursuant to the 2022 ICP, Thomson was eligible to be paid up to $49,500.00 upon meeting 150% of this KSO target. (**Exhibit G**).

108. Thomson fulfilled his duties under the 2022 ICP.

109. For Fiscal Year 2022, Roche arbitrarily determined that Thomson met 103% of his 2022 KSOs.

110. Thomson could not dispute the 2022 KSO percentage calculation, because Roche never provided Thomson with any basis for its calculation.

111. For Fiscal Year 2022, Roche paid Thomson a total target KSO payout of $33,990.00 over two paychecks, each paid on or about August 15, 2022, and February 15, 2023.

112. Thomson was no longer an employee at the time of the final 2022 ICP determination and payment.

113. Roche breached the 2022 ICP by, including but not limited to, failing to timely develop KSOs for 2022.

114. Roche breached the 2022 ICP by, including but not limited to, failing to timely approve KSOs for 2022.

115. Roche breached the 2022 ICP by, including but not limited to, failing to develop KSOs that were "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products."

116. Roche breached the 2022 ICP by, including but not limited to, failing to pay Thomson's full KSO payout earned under the 2022 ICP.

117. Pursuant to the 2022 ICP, Thomson was eligible to be paid up to a $35,000.00 Balanced Plan Performance Accelerator, by achieving 101% Revenue and 115% or above in KSO score for the year.

118. Because Roche arbitrarily determined that Thomson met 103% of his 2022 KSO score, it failed to pay him any Balanced Plan Performance Accelerator for Fiscal Year 2022.

119. Thomson has suffered damages as a result of Roche's breach of the 2022 ICP in the amount of $50,510.00.

### COUNT VI: INDIANA WAGE PAYMENT STATUTE

120. Thomson incorporates by reference all other paragraphs of this Second Amended Complaint as if fully set forth here.

121. Thomson's wages under the Indiana Wage Claims Statute, Ind. Code § 22-2-9-1(b) include his Total Target Incentive Opportunity.

122. Roche failed to pay Thomson's wages, including the full KSO and Balanced Plan Accelerator components of his Total Target Incentive Opportunity in years 2018, 2019, 2020, 2021, and 2022 when due.

123. Roche failed to pay Thomson's wages in the combined amount of $45,386.00 for years 2018 and 2019.

124. Roche failed to pay Thomson's wages in the combined amount of $76,250.00 for years 2020 and 2021.

125. Roche failed to pay Thomson's wages in the amount of $50,510.00 for year 2022.

126. Roche's failure to pay Thomson's unpaid wages as required by his written employment contract violated the Indiana Wage Payment Statute, Ind. Code § 22-2-5-2 *et seq*.

127. On May 8, 2023, Thomson received a letter from the Indiana Department of Labor and Attorney General to permit him to bring an action in court for his 2018 and 2019 claims under the Indiana Wage Payment Statute.

128. On November 30, 2022, Thomson received a letter of referral from the Indiana Department of Labor and Attorney General to permit him to bring an action in court for his 2020 and 2021 claims under the Indiana Wage Payment Statute.

129. On February 28, 2023, Thomson received a letter of referral from the Indiana Department of Labor and Attorney General to permit him to bring an action in court for his 2022 claim under the Indiana Wage Payment Statute.

WHEREFORE, Plaintiff John Thomson respectfully requests that judgment be entered in his favor, and against Defendant Roche Diagnostics Corporation, in an amount sufficient to compensate him for his pay, liquidated damage penalties, pre- and post-judgment interest, attorney's fees, and the costs of this action, and all other just and proper relief.

Dated: May 16, 2023 	Respectfully submitted,

/s/ *Annavieve C. Conklin*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

*Attorneys for John Thomson*

## REQUEST FOR JURY TRIAL

Plaintiff John Thomson, by counsel, demands trial by jury in this matter on all claims so triable.

Respectfully submitted,

*/s/ Annavieve C. Conklin*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
DELANEY & DELANEY LLC
3646 Washington Blvd.
Indianapolis, IN 46205
Tel: (317) 920-0400

*Attorneys for John Thomson*