UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN THOMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00099-SEB-MG |
| | ) | |
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff John Thomson ("Mr. Thomson") has sued his former employer, Defendant

Roche Diagnostics Corporation ("Roche"), to recover alleged underpayments made to him

pursuant to Roche's incentive compensation program for fiscal years 2018–2022. Roche

has moved for judgment on the pleadings, dkt. 55, arguing that Mr. Thomson's noncompli-

ance with its internal dispute resolution procedures precludes his lawsuit. Alternatively,

Roche argues that any claims that accrued before December 12, 2020, are barred by the

applicable statute of limitations. For the reasons explained below, Roche's motion is

**GRANTED in part** and **DENIED in part**.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Much "[l]ike Rule 12(b) mo-

tions, courts grant Rule 12(c) motions only if  'it appears beyond doubt that the plaintiff

cannot prove any facts that would support his claim for relief.' " *N. Indiana Gun & Outdoor*

1

*Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)). The moving party must, therefore, "demonstrate that there are no material issues of fact to be resolved." *Id.* In reviewing "the complaint, the answer, and any written instruments attached as exhibits," we must take the facts in the light most favorable to the nonmoving party. *Id.*; *e.g.*, *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017).

## BACKGROUND

### I.   Factual Background

In January 2010, having spent the previous three decades with Roche, Mr. Thomson accepted a promotion to the position of National Segment Sales Director, which proposal was memorialized in a written offer letter ("2010 Letter"). The 2010 Letter informed Mr. Thomson, among other things, that he would "be eligible to participate in an Incentive Program, which [would] be explained by [his] Supervisor." Second Am. Compl. Ex. 1, dkt. 50-1 (sealed).

Two years later, in January 2012, Roche again promoted Mr. Thomson, this time to the position of National Director of Group Purchasing (subsequently retitled as Corporate Accounts Director), which he held until his January 2023 retirement. The terms of the second promotion were set out in an offer letter that Mr. Thomson received in 2011 and signed in 2012 ("2012 Letter"), stating that the terms of Mr. Thomson's salary and incentive compensation "[a]ll remain[ed] the same." Second Am. Compl. Ex. 2, dkt. 50-2 (sealed). Mr. Thomson describes the 2012 Letter as a valid written employment contract.

For fiscal years 2018 through 2022, Mr. Thomson's compensation structure included a combined fixed salary component and an incentive compensation component, the latter of which Roche set forth in a written Incentive Compensation Plan ("ICP") for each fiscal year from 2018 to 2022. Each ICP contained specific Key Sales Objectives ("KSOs"), which were semi-annual payouts based on standalone performance. Pursuant to the ICPs, Roche established a schedule of KSOs with "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products." Second Am. Compl. ¶ 18, dkt. 49. The ICPs also required next level line managers and HR Business Partners to submit and sign-off on all KSOs by March 31 of each plan year.

Mr. Thomson alleges that his direct manager, Jason Fowler ("Mr. Fowler"), failed to timely develop KSOs by the March 31 deadlines for FY 2018, 2019, 2020, 2021, and 2022. Mr. Thomson also alleges that Vice President of Corporate Accounts Ron DiNizo ("Mr. DiNizo"), Mr. Fowler's next line level manager, failed to timely approve written KSOs. In place of the timely KSOs, Mr. Thomson contends, "Roche retroactively generated KSOs" and "arbitrarily calculated" his ICP payments. *Id.* ¶ 26.

During fiscal years 2018 through 2022, Mr. Thomson avers that he did not receive his full ICP entitlements, despite his sales numbers equaling (or possibly exceeding) those of his peers, who did receive the maximum payouts available to them. Mr. Thomson contends that he was prevented from being able to monitor his performance because Roche failed to timely develop and communicate his KSOs each year. He further alleges that in response to his requests for documentation demonstrating how Roche calculated his KSOs for FY 2018–2022, "Roche provided only vague summary descriptions, such as 'strategic

3

engagement with GRO & Key Members' and 'engagement with local sales teams, utilization of Roche resources.' " *Id.* ¶ 36.

According to the operative complaint, Mr. Thomson alleges that he timely complained about the arbitrary determination of his KSOs and ICP payouts to Mr. DiNizo and/or Mr. Fowler; timely disputed Roche's failure to provide measurable KSOs; and timely disputed the calculation of his KSO percentages. He also contends that he was under no requirement to comply with any dispute resolution procedures under his ICPs "because Roche prevented him from doing so by refusing to provide any measurable basis for his KSO percentage calculations." *Id.* ¶ 42. Despite having had notice of Mr. Thomson's grievances, Roche never initiated any process to adjust Mr. Thomson's KSO percentages or ICP payouts. For these failures, Mr. Thomson alleges that Roche owes incentive compensation properly due to him under the terms of his FY 2018–2022 ICPs.

## II.    Procedural History

On December 12, 2022, Mr. Thomson filed this lawsuit in state court, and, on January 17, 2023, Roche timely removed it to federal court. In March 2023, Mr. Thomson amended his complaint, and, one month thereafter, Roche moved for judgment on the pleadings, dkt. 35.

On May 22, 2023, as Roche's motion pended, Mr. Thomson was granted leave of the court to file a Second Amended Complaint, wherein he asserts five counts of breach of contract and one count for violations of the Indiana Wage Payment Statute, Ind. Code § 22-2-5-2 *et seq.*, based on alleged underpayments of the ICPs for FY 2018 through 2022.

On June 14, 2023, Roche again moved for judgment on the pleadings, arguing that Mr. Thomson's claims are barred by his failure to comply with the internal dispute procedures outlined in Roche's Sales and Service Incentive Compensation Plan Policy ("ICP Policy"), a copy of which Roche attached to its Answer. Alternatively, Roche argues that a two-year statute of limitations bars any claims accrued before December 12, 2020. Roche's Second Motion for Judgment on the Pleadings, dkt. 55, is fully briefed and awaits a ruling.

## DISCUSSION

### I.      Dispute Resolution under the ICP Policy

In matters of contract interpretation, Indiana law instructs courts to construe clear and unambiguous contract terms according to their plain and ordinary meanings. *Cabanaw v. Cabanaw*, 648 N.E.2d 694, 697 (Ind. Ct. App. 1995). Where contractual language is unambiguous, its interpretation is "a pure question of law" appropriate for resolution on a motion for judgment on the pleadings. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 840 (Ind. Ct. App. 2017).

According to Roche, Mr. Thomson failed to abide by the ICP Policy's internal dispute resolution procedures and, consequently, cannot now challenge his ICP payments. The ICP Policy directs employees to raise alleged payment discrepancies in writing within forty-five days of the final calendar year-end payout. Absent any timely complaints, the calculation and payment are regarded as final. The ICP Policy also provides that "[a]ny disputes . . . shall be submitted to such employee's direct manager or supervisor and through the Payment Exception Process." ICP Policy 15, dkt. 54 (sealed). Because the ICP Policy's

terms are unambiguous, Roche argues, Mr. Thomson's breach of contract claims in Counts I–V necessarily fail.

Notwithstanding Roche's internal dispute resolution procedures, the ICP Policy submitted with Roche's Answer states clearly, at the bottom of each page, that it became effective on May 25, 2022. Roche attaches no other versions, nor does it contend that the ICP Policy applied retroactively to Mr. Thomson's 2018, 2019, 2020, and 2021 ICPs, thereby precluding his breach of contract claims in Counts I–IV. Based on the pleadings before us, the ICP Policy's internal dispute provisions pose no bar to Mr. Thomson's claims in Counts I–IV.

As for the remaining breach of contract claim re: the 2022 ICP (Count V), we find that Mr. Thomson has satisfactorily pled compliance with the ICP Policy (assuming it applies). For instance, Mr. Thomson alleges that he "timely disputed" his KSO calculations, Second Am. Compl. ¶ 41, dkt. 49, and that Roche effectively "prevented" him from utilizing the ICP dispute procedures "by refusing to provide any measurable basis for his KSO percentage calculations," *id.* ¶ 42. Moreover, Mr. Thomson alleges that he received his final KSO payout for FY 2022 on February 15, 2023—almost one month after he had retired and was no longer working for Roche. Thus, it is unclear based on the pleadings alone whether Roche's internal mechanisms even remained available to Mr. Thomson. Taking the facts in the light most favorable to the nonmoving party, as we must at this stage, Mr. Thomson's allegations are sufficient to defeat the instant motion.

At the pleading stage, "[l]itigants are entitled to discovery before being put to their proof . . . ." *Bennet v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). Here, resolution of Mr.

Thomson's claims—all involving multiple contracts and various informal procedures—must await further factual development.  Lacking a fully developed factual record, Roche's motion for judgment on the pleadings must be and is therefore denied.

## II.    Statute of Limitations

In the alternative, Roche contends that Mr. Thomson's claims are subject to a two-year statute of limitations, foreclosing any claims that accrued before December 12, 2020. Mr. Thomson argues that his claims are subject to a ten-year statute of limitations applicable to actions arising out of written employment contracts.

The Indiana Code provides that "[a]n action relating to the terms, conditions, and privileges of employment except actions based upon a written contract (including . . . wages, or salary) must be brought within two (2) years of the date of the alleged act or omission complained of." I.C. § 34-11-2-1. However, an action based on a written employment contract is governed by a ten-year statute of limitations. *Id.* § 34-11-2-11; *Kemper v. Warren Petroleum Corp.*, 451 N.E.2d 1115, 1117 (Ind. Ct. App. 1983) (written retirement plan does not qualify as a written employment contract).

"Where the existence of an employment relationship is an essential element of a cause, the applicable statute of limitations is determined by whether the contract of employment was oral or written." *Id.* A written employment contract must contain: (1) the place of employment; (2) the period of employment; (3) the nature of the services the employee is to render; and (4) the compensation the employee is to receive. *Knutson v. UGS*, No. 1:05-cv-1319-SEB-TAB, 2007 WL 2122192, at *5 (S.D. Ind. July 19, 2007), *aff'd sub*

7

*nom. Knutson v. UGS Corp.*, 526 F.3d 339 (7th Cir. 2008); *Pour v. Basic Am. Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. Ct. App. 1987).

An offer letter may operate as a written employment contract, so long as "all the covenants necessary for an employment contract [a]re contained" therein. *Pour*, 512 N.E.2d at 439. In other words, when an offer letter outlines the place, period, compensation, and nature of employment, its terms are sufficiently definite and complete such that it fairly "embod[ies] the entire agreement between the parties." *Id.* When an offer letter lacks any one of these elements, it cannot be regarded as a complete written contract subject to the ten-year statute of limitations. *Id.*

Here, both parties agree that the ICPs are not themselves written employment contracts but, instead, represent privileges emanating from Mr. Thomson's employment relationship with Roche. Nevertheless, Mr. Thomson maintains that the 2012 Letter is a written employment contract, thereby excepting him from the general two-year limitations period. Roche, on the other hand, contends that the 2012 Letter does not satisfy the legal requirements of a written employment contract because it specifies no employment period.

Our review of the 2012 Letter reveals an absence of any provision relating to the period of employment, and, thus, it fails to satisfy the essential legal elements of a written employment contract under Indiana law. *Knutson*, 2007 WL 2122192, at *5. Because Mr. Thomson's claims arise out of an employment relationship—not a written employment contract—the two-year statute of limitations provided in Ind. Code § 34-11-2-1 necessarily controls.

Mr. Thomson filed this lawsuit on December 12, 2022; accordingly, any claims that accrued prior to December 12, 2020, are time-barred by the two-year statute of limitations. Thus, Mr. Thomson's claims relating to his 2018 ICP (Count I) and 2019 ICP (Count II) are entirely time-barred and must be dismissed. His claims relating to the 2020, 2021, and 2022 ICPs (Count III–V), as well as related Indiana Wage Payment claims (Count VI), may proceed insofar as they accrued after December 12, 2020.

## CONCLUSION

For the reasons provided above, Roche's Second Motion for Judgment on the Pleadings, dkt. 55, is **GRANTED in part** and **DENIED in part**. Roche's motion is <u>granted</u> with respect to all claims accruing before December 12, 2020, and <u>denied</u> with respect to all claims accruing thereafter.

Roche's Motion for Judgment on the Pleadings, dkt. 35, is **DENIED as moot**.

IT IS SO ORDERED.

Date:
_____2/14/2024_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

David A. Campbell
LEWIS BRISBOIS BISGAARD & SMITH, LLP
david.a.campbell@lewisbrisbois.com

Annavieve C. Conklin
DELANEY & DELANEY LLC
ACONKLIN@DELANEYLAW.NET

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

Hunter Edmonds
Gordon Rees Scully Mansukhani, LLP
hedmonds@grsm.com

Donald G. Slezak
Gordon Rees Scully Mansukhani LLP
dslezak@grsm.com