UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN THOMSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:23-CV-00099-SEB-MG |
| | ) | |
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF JOHN THOMSON'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 74]**

Plaintiff John Thomson ("Thomson"), by counsel, respectfully files his Response in Opposition to Defendant Roche Diagnostics Corporation's ("Roche") Motion for Summary Judgment [Dkt. 74]. Thomson respectfully requests that the Court deny Roche's Motion for Summary Judgment in its entirety.

Thomson is suing Roche for breach of his 2020, 2021, and 2022 ICPs[1] and for violations of the Indiana Wage Payment Act. Ind. Code § 22-2-5-1 *et seq*. The Court should deny Roche's Motion for Summary Judgment [Dkt. 74] for three reasons. First, Roche breached its requirements under its annual ICPs to provide Thomson with KSOs.  Roche admits that Thomson's annual ICPs are contracts and that the IPCs required Roche to provide KSOs to Thomson. Thomson does not seek to enforce  the related Policy, RDC-107, so this Court need not decide whether RDC-107 is a contract. Second, by complaining to his supervisor, Jason Fowler, about Fowler's failure to provide Thomson with KSOs, Thomson satisfied any internal review process that Roche may have

---

[1] Pursuant to the Court's recent ruling on Defendant's Motion for Judgment on the Pleadings, Thomson's claims are limited to the 2020-2022 time period. [Dkt. 72 at 9].

required. Third, Roche does not advance any argument which could provide a basis to dismiss Thomson's statutory wage claims.

## I.      STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Local Rule 56-1(b), Thomson identifies the following potentially determinative facts and factual disputes that demonstrate a dispute of fact precluding summary judgment:

**(1)      Each year's ICP was "part of [Thomson]'s employment agreement with Roche."** [Dkt. 53 at 9-11 (Answer, ¶¶ 76, 91, 106)]. This fact is determinative that each annual ICP was a contract. This evidence disputes Roche's assertion that Roche did not breach a contract with Thomson because RDC-107, the policy referred to in the ICPs, was not a contract. [Dkt. 75 at 14-15].

**(2)      Fowler did not develop, and DiNizo did not approve, KSOs for Thomson for 2020, 2021 or 2022 as required by each ICP.** [Dkt. 86-1 (Ex. A, Fowler Dep. 21:13-20, 22:18-21, 23:2-8); Dkt. 86-2 (Ex. B, DiNizo Dep. 38:18-22, 39:2-19, 46:22-47:5); Dkt. 86-3 (Ex. C, Thomson Dep. 10:2-10; 33:9-34:10, 66:4-11; 70:14-23; 93:5-9; 93:24-94:2, 94:16-95:11, 99:8-20); Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails)]. This fact is determinative that Roche beached Thomson's IPCs for 2020, 2021 and 2022.This evidence disputes Roche's assertions that DiNizo's direct reports provided KSOs to their teams [Dkt. 75 at 8], and that Fowler met weekly with his team members to roll out and discuss KSOs throughout the year. *Id.*

**(3)      Thomson timely disputed his 2020 incentive compensation by meeting with Fowler.** [Dkt. 86-3 (Ex. C, Thomson Dep. 21:3-19; 65:3-4, 72:9-74:2); Dkt. 86-1 (Ex. A, Fowler Dep. 77:24-78:15, 88:1-25)]. This evidence disputes Roche's assertions that Thomson failed to exhaust internal remedies available to him under RDC-107 with respect to his 2020 incentive

compensation pay [Dkt. 75 at 15-17] and that Thomson was "happy" with his KSO payment for 2020 [Dkt. 75 at 10-11].

(4)     **Thomson timely disputed his 2021 incentive compensation in writing to Fowler and by meeting with DiNizo.** [Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails); Dkt. 86-3 (Ex. C, Thomson Dep. 21:23-22:11, 43:22-44:8, 45:2-10, 65:3-4, 96:21-97:6, 98:2-99:7); Dkt. 86-2 (Ex. B, DiNizo Dep. 65:2-5, 53:25-54:17, 73:20-74:16)]. This evidence disputes Roche's assertion that Thomson failed to exhaust internal remedies available to him under RDC-107 with respect to his 2021 incentive compensation pay [Dkt. 75 at 15-17] and that Thomson never "submit[ted] a written complaint regarding the KSO payments in 2019, 2020, 2021, and 2022." [Dkt. 75 at 15]. This evidence also disputes Roche's assertion that "Fowler explained his reasoning for Plaintiff's KSO payment [for 2021] and Plaintiff elected not to take the issue further" [Dkt. 75 at 11] and that that "Plaintiff knew that he could have disputed his KSO payment to DiNizo or human resources, but he elected not to take the issue beyond Fowler." [Dkt. 75 at 10]. This also disputes that "DiNizo does not recall any of the employees that he managed coming to him from 2018 through 2022 to discuss KSO payments." [Dkt. 75 at 7].

(5)     **Thomson was no longer employed during the time period provided by RDC-107 to complain about his 2022 incentive compensation.** [Dkt. 86-3 (Ex. C, Thomson Dep. 7:14-19, 45:16-19, 21:23-22:3, 26:10-27:9)]. This evidence disputes Roche's assertion that Thomson failed to exhaust available internal remedies for 2022: "As with prior years, Plaintiff did not take the KSO payment issue beyond Fowler [for 2022]." [Dkt. 75 at 12]. This evidence also disputes any insinuation that Thomson did not raise this issue "early in the year" with respect to the 2022 ICP, or "prior to the lawsuit." [Dkt. 75 at 12].

3

(6)     **Thomson timely satisfied RDC-107 by raising a dispute to his direct manager.**
[Dkt. 86-2 (Ex. B, DiNizo Dep. 64:2-65:5); Dkt. 86-3 (Ex. C, Thomson Dep. 33:9-34:10, 93:24-94:2, 93:24-94:2,  94:16-95:3)]. This evidence disputes Roche's assertion that "Plaintiff admits that he did not submit a written complaint regarding the KSO payments in 2019, 2020, 2021, and 2022" and Roche's  implication that Thomson was required to file a *written* complaint related to his KSO payout for any given year. [Dkt. 75 at 7]. This also disputes the implication that Thomson was required to escalate his internal complaint above his direct manager in Roche's assertion that "Plaintiff knew that he could have disputed his KSO payment to DiNizo or human resources, but he elected not to take the issue beyond Fowler." [Dkt. 75 at 10, 11]. This also disputes the implication that Thomson did not timely raise his concerns under RDC-107 in Roche's assertion that "the time to raise the issue was early in the year when the ICP plan was rolled out to employees." [Dkt. 75 at 12].

(7)     **The ICPs required Roche to create KSOs with "specific and measurable" goals each year.** [Dkt. 50-5 at 5 (2020 ICP), Dkt. 50-6 at 5 (2021 ICP); Dkt. 50-7 at 4 (2022 ICP); Dkt. 86-2 (Ex. B, DiNizo Dep. 46:22-47:5); Dkt. 86-1 (Ex. A, Fowler Dep. 23:2-8); Dkt. 86-3 (Ex. C, Thomson Dep. 14:2-9, 94:16-95:3)]. This evidence disputes Roche's assertions that KSOs are a "non-quantitative measure of performance" [Dkt. 75 at 4, 7-8] and that KSOs were meant to be "broad and general" [Dkt. 75 at 21]. This also disputes the implication that Roche was not required to provide KSOs annually because KSOs would have been the same from year to year or "remained consistent over the years." [Dkt. 75 at 4].

(8)     **The Payroll Exception Process is not applicable to Thomson's complaints.**
[Dkt. 86-2 (Ex. B, DiNizo Dep. 73:20-74:16)]. This evidence disputes Roche's assertion that "[i]f

4

a Payroll exception is raised, it is typically an issue like the issues that Plaintiff is raising in this lawsuit." [Dkt. 75 at 6-7].

**(9)** **If Thomson had received KSOs at the beginning of each ICP year, he would have overachieved and maximized his KSO payouts.** [Dkt. 86-3 (Ex. C, Thomson Dep. 9:22-10:10, 14:13-21, 16:22-17:11, 59:19-25, 60:1-22, 80:3-14, 90:10-14)]. This evidence disputes Roche's assertions that Thomson's performance did not justify higher KSO payouts [Dkt. 75 at 17-19] and that Thomson "simply is asking the Court to order Roche to pay him the maximum KSO payment each year, without providing any factual basis that his performance justified the maximum KSO payment" [Dkt. 75 at 12].

## II.   STATEMENT OF ADDITIONAL FACTS

Thomson worked for Roche for forty-three and a half years. [Dkt. 86-3 (Ex. C, Thomson Dep. 10:11-14)]. Jason Fowler was Thomson's direct supervisor from 2015 through 2022. [Dkt. 86-1 (Ex. A, Fowler Dep. 15:8-10)]. Fowler reported to Ron DiNizo, the Vice President of Corporate Accounts, beginning in 2018. [Dkt. 86-2 (Ex. B, DiNizo Dep. 15:10-16, 17:12-14, 17:22-18:3)].

Since at least 1997, Thomson worked as a Roche sales employee and received part of his compensation under incentive compensation plans. [Dkt. 86-3 (Ex. C, Thomson Dep. 12:15-13:4)]. From 2018 through 2022, Thomson received written Incentive Compensation Plans (ICPs) each year from Fowler, his manager. [Dkt. 86-3 (Ex. C, Thomson Dep. 92:6-22)]. Under the ICPs, Thomson's incentive compensation included both group incentives and individual incentives. [Dkt. 86-3 (Ex. C, Thomson Dep. 13:1-4, 17:12-16)]. The individual incentive components were known as "key sales objectives," or "KSOs." [Dkt. 86-3 (Ex. C, Thomson Dep. 13:20-14:1)].

**A. 2020 ICP.**

Roche admits that the "2020 ICP was part of Plaintiff's employment agreement with Roche." [Dkt. 53 at 9 (Answer, ¶ 76)]. The 2020 ICP required Roche to provide KSOs to Thomson with "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products." [Dkt. 50-5 at 5 (2020 ICP)]. The 2020 ICP required that all KSO objectives details "must be submitted and signed-off by March 31 of the plan year. Sign-off must be completed by next level line manager and HR Business Partner." *Id*. For Thomson, the "next level line manager" who needed to sign off on Thomson's KSOs was DiNizo. Thomson had an annual KSO target of $15,000.00. [Dkt. 50-5 at 5 (2020 ICP); Dkt. 86-1 (Ex. A, Fowler Dep. 68:19-69:4)]. Thomson could earn up to 125% of his KSO target. [Dkt. 50-5 at 5 (2020 ICP)] Thomson could further earn a $30,000 Balanced Plan Performance Accelerator ("Accelerator") by achieving a KSO score of 115% or above. *Id*. at 6. Roche paid Thomson his a 100% KSO payout for 2020, with no Accelerator. [*Id.* at 6; Dkt. 86-3 (Ex. C, Thomson Dep. 72:9-73:6)].

**B. 2021 ICP.**

Roche admits that the "2021 ICP was part of Plaintiff's employment agreement with Roche." [Dkt. 53 at 10 (Answer, ¶ 91)]. The 2021 ICP required Roche to provide KSOs to Thomson with "[s]pecific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products. [Dkt. 50-6 at 5 (2021 ICP)]. The 2021 ICP required that all KSO objectives details "must be submitted and signed-off by next level line manager and HR Business Partner." *Id*. Under the 2021 ICP, Thomson had an annual KSO target of $30,000.00. [Dkt. 86-1 (Ex. A, Fowler Dep. 78:16-24); Dkt. 50-6 at 5 (2021 ICP)]. Thomson could earn up to 125% of his KSO target. [Dkt. 50-6 at 6 (2021 ICP)]. Thomson could further earn a $25,000 Balanced Plan Performance Accelerator ("Accelerator") by achieving a KSO score of

6

115% or above. *Id*. at 6. Thomson received a 100% KSO payout for 2021, with no Accelerator. [Dkt. 86-3 (Ex. C, Thomson Dep. 74:23-75:2)].

### C. **2022 ICP.**

Roche admits that the "2022 ICP was part of Plaintiff's employment agreement with Roche." [Dkt. 53 at 11]. The 2022 ICP required Roche to provide KSOs to Thomson with "specific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products." [Dkt. 50-7 at 4 (2022 ICP)]. The 2022 ICP required that all KSO objectives details "must be submitted and signed-off by the next-level line manager and HR Business Partner." *Id*. Thomson had an annual KSO target of $33,000.00. [Dkt. 86-1 (Ex. A, Fowler Dep. 93:2-9; Dkt. 50-7 at 4 (2022 ICP)]. Thomson could earn  up to 150% of his KSO target. [Dkt. 50-7 at 4 (2022 ICP)]. Thomson could further earn a $35,000 Balanced Plan Performance Accelerator ("Accelerator") by achieving a KSO score of 115% or above. *Id*. Thomson received a 103% KSO payout for 2022, with no Accelerator. [Dkt. 86-3 (Ex. C, Thomson Dep. 78:10-13)].

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The disputed facts and evidence, and all justifiable inferences that can be drawn from them, must be viewed in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Liberty Lobby*, 477 U.S. at 255. "[O]n a motion for summary judgment, 'the court has one task and one task only: to decide, based on the evidence of

record, whether there is any material dispute of fact that requires a trial.'" *EEOC v. Preferred Mgmt. Corp.*, 216 F. Supp. 2d 763, 803 (S.D. Ind. 2002) (internal citations omitted).

## IV.    SUMMARY OF THE ARGUMENT

From 2020-2022, Thomson's supervisor, Jason Fowler, failed to develop any KSOs for Thomson, get them approved by upper management, or provide them to Thomson, in violation of the terms of each ICP. Because Roche did not provide Thomson with any KSOs to attempt to achieve or exceed, Roche deprived Thomson of opportunities to maximize his ICP payouts, including the KSO payments and the Balanced Plan Performance Accelerators. Thomson is suing Roche for breach of contract for the 2020, 2021, and 2022 ICPs. Thomson also brings claims under the Indiana Wage Payment Act for the amounts owed to him, plus liquidated damages and attorney fees. Ind. Code § 22-2-5-1 *et seq*.

In its summary judgment motion, Roche does not dispute that it breached the 2020, 2021, and 2022 ICPs by failing to provide Thomson with KSOs. Nor does Roche dispute that the Indiana Wage Payment Act applies to Thomson's incentive compensation under the ICPs. Instead, Roche first argues that Policy RDC-107 (which is incorporated by reference into the 2021 and 2022 ICPs) is legally unenforceable because RDC-107 is not a contract. Second, Roche argues that Thomson failed to  exhaust Roche's internal dispute resolution procedures described in RDC-107. Third, Roche argues that Thomson cannot prove what he would have satisfied the KSOs, had Roche actually created and provided them to Thomson.

All of Roche's arguments fail. First, Thomson seeks to enforce the plain terms of the annual written ICPs – not the ICP Policy, RDC-107, which is an entirely a distinct document from the ICPs. Roche has admitted that the ICPs are part of Thomson's employment agreements with Roche. Second, Thomson was not required to challenge his incentive compensation through

Roche's formal dispute resolution processes. Those processes are reserved for an employee's disputes over calculation discrepancies and assignment of credit errors. But Thomson satisfied RDC-107 any event by complaining to Fowler about his failure to provide Thomson with KSOs. Finally, Roche cannot claim that Thomson has no damages when its own actions prevented Thomson from performing his obligations under the ICPs. The Court should deny Roche's Motion for Summary Judgment.

## V.     ARGUMENT

### A.  Thomson Has Contractual Rights Under the 2020-2022 ICPs.

"To prevail on a claim for breach of contract, the plaintiff must prove the existence of a contract, the defendant's breach of that contract, and damages resulting from that breach." *Haegert v. Univ. of Evansville*, 977 N.E.2d 924, 937 (Ind. 2012). Thomson brings claims for Roche's breach of the 2020, 2021, and 2022 ICPs between Thomson and Roche. Roche challenges the first element, arguing that the ICP Policy (RDC-107) is not a contract between Thomson and Roche. But Thomson bases his contract claim on the annual ICPs themselves, not RDC-107. [Dkt. 49 at 9-13]. Roche's annual ICPs are distinct from RDC-107 and Thomson does not seek to enforce RDC-107.

#### 1.  The ICPs Were "Part of Plaintiff's Employment Agreement with Roche."

Roche admits in its Answer that the ICPs were "part of Plaintiff's employment agreement with Roche." [Dkt. 53 at 9-11, ¶¶ 76, 91, 106]. Roche's admissions establish that Thomson may enforce the terms of the ICPs through contract law. *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in pleadings…that are binding upon the party making them."). Even if RDC-107 did not exist, Thomson would still have a claim for breach of the ICPs. Roche's argument that RDC-107 is akin to an employee handbook is a diversion. The Court need not consider whether Roche's Policy RDC-107 is an enforceable

contract,[2] because Thomson does not seek to enforce any of the terms of RDC-107. He seeks to enforce the ICPs themselves.

## 2. Roche Breached Each ICP by Failing to Provide KSOs.

The ICPs for 2020, 20201 and 2022 required Roche to develop KSOs for Thomson, which were to be "specific and measurable actions to be completed, specific steps, targets or metrics to be measured against or specific end products." [Dkt. 50-5 at 5 (2020 ICP);  Dkt. 50-6 at 5 (2021 ICP); Dkt. 50-7 at 4 (2022 ICP)]. DiNizo and Fowler both agreed that is an accurate description of KSOs. [Dkt. 86-2 (Ex. B, DiNizo Dep. 46:22-47:5; Dkt. 86-1 (Ex. A, Fowler Dep. 23:2-8)]. KSOs were not subjective but were  to be "specific and measurable" for the individual. [Dkt. 86-3 (Ex. C, Thomson Dep. 14:2-9)]. Roche would typically provide its employees ICPs in January, but would provide KSOs after January, because Roche did not yet know revenue and profit numbers in January. [Dkt. 86-3 (Ex. C, Thomson Dep. 94:16-95:3)]. When Thomson signed off on his ICPs in January of each year [Dkt. 75 at 8], he was not signing off on the specific details of his KSOs, which were not included. [Dkt. 86-3 (Ex. C, Thomson Dep. 33:9-34:10; 93:24-94:2)]. Throughout his twenty years of earning incentive compensation from Roche, Thomson's KSOs varied substantially by year, depending on Roche's revenue projections, the market, and Roche's sales. [Dkt. 86-3 (Ex. C, Thomson Dep. 36:25-38:6)]. Thomson testified that, while he reported to

---

[2] There is no case law stating, and Roche does not argue, that incorporating an employee handbook *negates* a contract. In fact, an employee handbook may become an enforceable contract where, as here, the employer expressly incorporates by reference the handbook into other agreements. *See Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 754 (Ind. 2018) ("We interpret incorporated content as part of the agreement."). The 2021 and 2022 ICPs state: "Incentive compensation is subject to the terms and conditions set forth in the Sales and Service Incentive Compensation Plan Policy (RDC-107), which is incorporated by reference herein to this plan." [Dkt. 50-6 at 1 (2021 ICP); Dkt. 50-7 at 1 (2022 ICP)]. Roche incorporated RDC-107 into the ICPs, at least for 2021 and 2022, which the makes IPC Policy "part of the agreement." *Care Grp. Heart Hosp.*, 93 N.E.3d at 754. This distinguishes RDC-107 from the employee handbook at issue in *Orr v. Westminster Village North*. There is no indication in *Orr* that the employer incorporated the employee handbook into any contract or agreement between the employer and employee. 689 N.E.2d 712, 715-716 (Ind. 1997). However, Thomson's claims do not arise under the handbook, but under the ICPs, so the Court need not analyze this issue.

Fowler, from 2020-2022, Fowler never provided Thomson with KSOs. [Dkt. 86-3 (Ex. C, Thomson Dep. 10:2-10; 70:14-23; 93:5-9)].

For each ICP for 2020, 2021 and 2022, Roche required that the KSO details must be "submitted and signed-off" by the "next level line manager and HR Business Partner." [Dkt. 50-5 at 5 (2020 ICP); Dkt. 50-6 at 5 (2021 ICP); Dkt. 50-7 at 4 (2022 ICP)]. In 2020, Roche required that the sign-off be completed by March 31. [Dkt. 50-5 (2020 ICP at 5)]. Fowler testified, "I don't remember getting them signed off in that way." [Dkt. 86-1 (Ex. A, Fowler Dep. 21:13-17)]. Fowler testified that it was not his practice to run the KSOs by the next level line manager. [Dkt. 86-1 (Ex. A, Fowler Dep. 21:18-20)]. Fowler testified that the KSOs were memorialized in writing "sometimes," but "not consistently." [Dkt. 86-1 (Ex. A, Fowler Dep. 22:18-21)]. DiNizo never specifically confirmed what Fowler was rolling out KSOs to his team. [Dkt. 86-2 (Ex. B, DiNizo Dep. 38:18-22)]. Roche asserts that "DiNizo would review the proposed KSO payments across each team that reported to him to verify the payments were fair and driving performance." [Dkt. 75 at 9]. DiNizo reviewed Thomson's KSO scores at the end of the year, after percentage scores were assigned by the direct manager. [Dkt. 86-2 (Ex. B, DiNizo Dep. 39:2-19)].

Thomson asked Fowler countless times for more specific information on his KSOs so that he could know what goals he was working toward. [Dkt. 86-3 (Ex. C, Thomson Dep. 66:4-11; 95:4-11)]. From 2018 through 2022, the only time that Fowler provided information to Thomson about his KSOs was for year 2021, after his payout. [Dkt. 86-3 (Ex. C, Thomson Dep. 99:8-19)]. Thomson questioned Fowler about how Fowler determined his KSO payment over the last four years, since he had not received KSOs, and Fowler provided only general statements about COVID for year 2021 that Thomson did not consider to be KSOs. [Dkt. 86-3 (Ex. C, Thomson Dep. 99:8-20; Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails)].

Therefore, Roche breached Thomson's ICPs by failing to provide Thomson with annual KSOs. For this reason alone, Roche is not entitled to summary judgment on Thomson's breach of contract claims.

### 3. Roche's Failure to Develop KSOs Prevented Thomson from the Opportunity to Maximize His Incentive Compensation.

Roche argues that, if it had developed KSOs, then Thomson cannot prove that he would have met the objectives in order to earn higher payouts than those he received. According to Roche, Thomson cannot prove that he would have satisfied the non-existent goals contained in the non-existent KSOs that Roche never created for him. In substance, Roche challenges the damages element of Thomson's claims, which is rarely appropriate for disposition on summary judgment. "Generally, the determination of damages is a question of fact for the jury." *Meridian Sec. Ins. Co. v. Hoffman Adjustment Co.*, 933 N.E.2d 7 (Ind. Ct. App. 2010) (citing *Bennett v. Broderick*, 858 N.E.2d 1044, 1051 (Ind. Ct. App. 2006)).

Roche's damages defense is barred by the prevention of performance doctrine. "A party who has breached a contract cannot take advantage of his breach to relieve him of his contractual obligations." *Rogier v. American Testing & Eng'g Corp.*, 734 N.E.2d 606, 620 (Ind. Ct. App. 2000). Roche breached the 2020-2022 ICPs because Fowler failed to develop KSOs for Thomson in those years, or have KSOs approved by his manager or the HR Business Partner. [Dkt. 86-1 (Ex. A, Fowler Dep. 21:13-17)]. Roche wrongfully prevented Thomson's performance by not giving him KSOs. Without the KSOs in advance, Thomson couldn't complete the non-existent KSOs and maximize his KSO payouts. Thomson also did not have the opportunity to earn the Balanced Plan Performance Accelerator, which required him to achieve at least 115% of his KSOs. [Dkt. 50-5 at 6 (2020 ICP); Dkt. 50-6 at 6 (2021 ICP); 50-6 at 4 (2021 ICP)]. Roche cannot take

advantage of its own breach to relieve it of its obligation to develop KSOs. Thomson deserved the opportunity to have his performance measured against the KSOs specifically.

At minimum, Thomson's testimony presents a genuine issue of material fact on this point. Thomson disagreed with his 2019 performance evaluation, which is not applicable to Thomson's claims for 2020, 2021 or 2022. [Dkt. 86-3 (Ex. C, Thomson Dep. 80:10-14)]. Thomson was eligible for compensation based on KSOs (or, as they were previously called, MBOs) for the last 20-plus years of his employment. [Dkt. 86-3 (Ex. C, Thomson Dep. 14:13-21, 16:22-17:11)]. Thomson testified that, as a 40-year employee, he knew what it took to be a good Roche employee. [Dkt. 86-3 (Ex. C, Thomson Dep. 59:19-25)]. Thomson understood what it took to drive profits, and that is exactly what he was trying to do for Roche. [Dkt. 86-3 (Ex. C, Thomson Dep. 60:6-9)]. Thomson proved his value to the company by negotiating and signing two contracts prior to his retirement that will produce revenues for Roche of approximately $2.5 billion over the next five years. [Dkt. 86-3 (Ex. C, Thomson Dep. 60:1-5)]. Thomson understood "what it took." [Dkt. 86-3 (Ex. C, Thomson Dep. 60:15-22; 90:10-14)]. But Roche failed to provide Thomson with a goal to achieve, thereby depriving Thomson of the opportunity to overachieve. (*Id.*) Thomson testified that, had KSOs been developed, he would have achieved the maximum KSO payout. [Dkt. 86-3 (Ex. C, Thomson Dep. 9:22-10:10)]. Thomson testified, "Had I had KSOs, I would have overachieved" each year. [Dkt. 86-3 (Ex. C, Thomson Dep. 80:3-8)].

Arguing that Plaintiff's performance was "average," Roche emphasizes alleged performance issues in 2019 (the only year where Thomson received a KSO payout below 100%). Roche's argument misses the point. Roche does not pay out KSOs based on an employee's general performance. Rather, Roche evaluates the employee's specific performance based on  the KSOs. In any event, Thomson's performance in 2019 is not relevant, because the Court has already

dismissed Thomson's claim for compensation under the 2019 ICP. [Dkt. 72 at 9]. Thomson earned 100% or more for his KSO payouts in 2020, 2021, and 2022, so Roche cannot claim that his performance was substandard in those years. [Dkt. 86-3 (Ex. C, Thomson Dep. 72:25-73:6, 74:23-75:2, 78:10-13)]. Comparisons between Plaintiff and his team members are also irrelevant. Thomson testified that what his co-workers made was "none of [his] concern," and that his concern was "how did [he] do against the KSOs that weren't developed." [Dkt. 86-3 (Ex. C, Thomson Dep. 61:10-18)].

Roche also recycles its arguments that Thomson had opportunities to raise this issue with management (through RDC-107 or otherwise), and didn't do so. As described below, Thomson did complain to his direct manager (Fowler) and next-level manager (DiNizo) about these issues. [Dkt. 86-3 (Ex. C, Thomson Dep. 21:23-22:11, 43:22-44:8, 45:2-10, 72:9-74:2, 96:21-97:6, 98:2-99:7; Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails)]. Furthermore, Thomson's complaint to DiNizo in March 2022 occurred "early in the year" and put DiNizo on notice of the need to make sure Fowler developed and received approval for the KSOs for 2022. *Id.*

Summary judgment should be denied on the element of damages because genuine issues of material fact exist as to the amount of Thomson's damages, and because Roche cannot benefit from its own breach that prevented Thomson from performing his obligations.

### B. To the Extent Required, Thomson Timely and Properly Raised His Disputes Concerning the KSOs and KSO Payments.

According to Roche, RDC-107 is not a contract. For that reason, Roche's internal exhaustion requirements contained in RDC-107 do not apply to Thomson's breach of contract claims.  But even assuming that RDC-107's exhaustive requirements were to apply, Thomson complied with all relevant policy requirements for the 2020, 2021, and 2022 ICPs. First, any policy provision purporting to require Thomson to raise errors regarding Roche's "calculations" or

"assignment of credit" do not apply to Thomson's claims here, because Thomson does not complain about Roche's "calculations" or "assignments of credit." Second, Section 4.0 of each version of RDC-107 uses the permissive "can" rather than the mandatory "shall" or "must" for Thomson to exhaust Roche's internal exhaustion processes. Third, genuine issues of material fact exist on whether Thomson's complaints relating to the 2020 and 2021 ICPs satisfied any alleged exhaustion requirements of RDC-107. Fourth, with respect to the 2022 ICP, Thomson was no longer employed at Roche at the time Roche made the final payment and, for that reason, Thomson had no opportunity to pursue any of Roche's internal remedies. Finally, Roche's argument does not negate Thomson's right to statutory compensation under the Indiana Wage Payment Act.

Due to the differences in ICP Policy language from year to year, Thomson will address each year of the ICP and ICP Policy separately.

### 1. Although Not Required, Thomson Complied With the 2020 ICP by Meeting with Fowler.

Roche amended RDC-107 effective January 6, 2020. [Dkt. 81-3 at 47 (Fowler Dep. Ex. 14, RDC-107 eff. 1/6/2020)]. Section 4.0 stated that "[w]ithin 60 days after the final calendar year-end payout, an employee *can* bring forward, in writing, any discrepancies in calculations for consideration." *Id*. at 54 (emphasis added). Section 10.6 stated, "[a]ny disputes regarding whether an employee was appropriately compensated in accordance with this policy shall be submitted to such employee's direct manager or supervisor, who shall resolve any such disputes, based on such information as the manager or supervisor deems appropriate, as determined in his or her discretion." *Id*. at 64. RDC-107 contains no requirement that Thomson submit any non-calculation dispute in writing. *Id.*

On or about February 15, 2021, Roche paid Thomson his final year-end payout for his 2020 ICP. [Dkt. 86-3 (Ex. C, Thomson Dep. 72:9-73:6)]. Thomson met with Fowler on or about that

same day to discuss his KSO payment.[3] [Dkt. 86-3 (Ex. C, Thomson Dep. 73:7-74:2)]. Thomson disagreed with the percentage payout because it was subjective, and Fowler did not provide Thomson with any specific and measurable KSOs. *Id.* Thomson told Fowler that Fowler needed to develop KSOs so that Thomson would overachieve as he had in the past. *Id.*

Thomson's discussion of the matter with Fowler fully complied with Section 10.6 of RDC-107, which required "disputes regarding whether an employee was appropriately compensated" to be submitted to his or her direct supervisor. [Dkt. 81-3 at 64 (Fowler Dep. Ex. 14, RDC-107 eff. 1/6/2020)]. Roche argues that Thomson never escalated the issue above Fowler that year. But nothing in the operative ICP Policy required him to do that. In fact, RDC-107 states that the direct supervisor, Fowler, had discretion to resolve the dispute. *Id.* Therefore, Thomson exhausted any requirement under Section 10.6.

Roche argues that Thomson was required to submit his complaint in writing under Section 4.0. This is incorrect for two reasons. First, Section 4.0 only applies to "discrepancies in calculation." *Id.* at 8. Thomson's complaint was not that Fowler made a calculation discrepancy, but rather that Fowler did not provide Thomson with any specific and measurable KSOs. [Dkt. 86-3 (Ex. C, Thomson Dep. 73:7-74:2)]. Second, Section 4.0 did not require Thomson to submit his complaint in writing; it merely stated that "an employee *can* bring forward, in writing, any discrepancies[.]" [Dkt. 81-3 at 54 (Fowler Dep. Ex. 14, RDC-107 eff. 1/6/2020)(emphasis added)]. Section 4.0 doesn't prevent an employee from bringing an issue verbally, just as Thomson did.

---

[3] Roche's assertion that "all of the employees in [Fowler's] department were happy with their KSO payments in 2020" misstates Fowler's testimony. [Dkt. 75 at 18]. Fowler testified that, in 2020, his team was generally happy that despite the strain on the company, there was a one-time payment based on COVID performance that year which was not part of the normal ICP, but Fowler could not recall specifically whether Thomson was happy or dissatisfied with his KSO rating for 2020. [Dkt. 86-1 (Ex. A, Fowler Dep. 72:9-73:6). Fowler admitted generally that he and Thomson had conversations where Thomson expressed that he was unhappy with either the structure of the compensation plan, or with his rating. [Dkt. 86-1 (Ex. A, Fowler Dep. 88:1-9).

DiNizo testified that an appropriate method for an employee to initiate a dispute under RDC-107 is for the employee to raise the dispute with his or her manager. [Dkt. 86-2 (Ex. B, DiNizo Dep. 65:2-5)]. Thomson complied with any applicable exhaustion requirement related to his 2020 ICP.

### 2. Although Not Required, Thomson Complied with 2021 ICP by Challenging His 2021 Incentive Payout in Writing to Fowler and In Person with DiNizo.

The 2021 version of RDC-107 changed the time period in Section 4.0 to 45 days for challenging an incentive payout, but continued to provide that "an employee *can* bring forward, in writing, any discrepancies in calculations for consideration." [Dkt. 81-3 at 86 (Fowler Dep. Ex. 19, RDC-107 eff. 1/1/2021) (emphasis added)]. In Section 10.6, Roche added references to the "Payout Exception Process," which "shall resolve disputes involving calculations or assignment-of-credit errors in their reasonable discretion." *Id*. at 14. Under Section 10.3, all "exception requests must be prepared by the Sales Manager/Director/Leader using the appropriate request form and submitted to Customer and Business Insights (CBI)/Sales Operations." *Id*. at 13. Roche used exception requests to allow an employee to request relief from a goal or to seek credit for territories or accounts that Roche did not factor into the employee's results. [Dkt. 86-2 (Ex. B, DiNizo Dep. 73:20-74:16)].

DiNizo confirmed that an appropriate method for an employee to initiate a dispute is for the employee to raise the dispute with his or her manager. [Dkt. 86-2 (Ex. B, DiNizo Dep. 65:2-5)]. DiNizo also confirmed that Roche used exception requests where an employee would request relief from a goal or request credit for territories or accounts that Roche had not factored into the employee's results. [Dkt. 86-2 (Ex. B, DiNizo Dep. 73:20-74:16)]. Even if the exception process applied to Thomson's dispute, the Policy provides that the "Manager/Director/Leader" – not the sales employee – is to submit the appropriate request form. [Dkt. 81-3 at 94 (Fowler Dep. Ex. 19, RDC-107 eff. 1/1/2021, § 10.3)].

None of the above provisions apply to Thomson. Thomson does not complain that Roche made any calculation discrepancies or errors. Thomson did not claim that Roche made any assignment of credit errors. Thus, the Payout Exception Process did  not apply to the topic of his dispute. Thomson was not required to bring forward his complaint in writing, because the Policy stated that he "can" bring it in writing, not that he shall or must do so. Furthermore, even if the Payout Exception Process was somehow applicable, Thomson could not  initiate that process on his own. The Policy  requires the "Sales Manager/Director/Leader" to prepare the request, not the employee.

Nevertheless, even if Thomson was required to exhaust his remedies under RDC-107, he did so. On March 4, 2022, Thomson emailed Fowler to ask him "how was my payout for KSOs determined?" [Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails)]. Thomson's email stated that Fowler never shared how he calculated the payment and requested documentation. *Id*. Fowler responded with details of Thomson's KSO components for 2021 and said that he was working to track down prior years. *Id*. Thomson replied by asking how Fowler determined "what the payout will be for KSOs since I/we have not had KSOs for the last 4 years." *Id*.

Thomson also met with DiNizo via Zoom in approximately March 2022. [Dkt. 86-3 (Ex. C, Thomson Dep. 21:23-22:3)]. During that meeting, Thomson presented his concern that Fowler had not provided Thomson with KSOs, and DiNizo said that Thomson should have come to him earlier. [Dkt. 86-3 (Ex. C, Thomson Dep. 98:14-99:7)]. Thomson said that DiNizo should have known that Fowler had not developed KSOs because DiNizo needed to sign off on them under the policy. *Id*.

To the extent that he was required to do so, Thomson appropriately initiated the dispute by bringing it to his manager, Fowler, in writing and within 45 days after receiving the final year-end

payout. [Dkt. 86-2 (Ex. B, DiNizo Dep. 65:2-5; Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails)]. He further escalated the issue to DiNizo over Zoom. [Dkt. 86-3 (Ex. C, Thomson Dep. 21:23-22:11, 43:22-44:8, 45:2-10, 96:21-97:6, 98:2-99:7)]. Thomson complied with any applicable exhaustion requirement related to his 2021 ICP.

### 3. 2022 ICP Does Not Apply to Thomson Because He Was No Longer Employed at Roche When He Received His Incentive Payout.

In 2022, Roche amended its ICP Policy twice, in January 2022, and May 2022. [Dkt. 81-3 at 109 (Fowler Dep. Ex. 23, RDC-107 eff. 1/31/2022); Dkt. 81-3 at 133 (Fowler Dep. Ex. 24, RDC-107 eff. 5/25/2022)]. Neither the January 2022 amendments nor the May 2022 amendments significantly alter the interpretation of Sections 4.0, 10.3, or 10.6. *Id*. Therefore, Thomson's concerns about the lack of KSOs were outside the scope of any exhaustion requirements under those sections. The 2022 ICP did not require Thomson to bring forward to Roche his complaints about his 2022 incentive payout, let alone in writing, for the same reasons as are described above.

Alternatively, Thomson was not required to exhaust RDC-107's dispute procedures because he was no longer an employee at Roche at the time of payout. Thomson retired from Roche on January 16, 2023. [Dkt. 86-3 (Ex. C, Thomson Dep. 7:14-19)]. When he received his year-end payout of his 2022 ICP on February 15, 2023, he was no longer employed. [Dkt. 86-3 (Ex. C, Thomson Dep. 45:16-19)]. Therefore, Roche's internal dispute resolution procedures were no longer available to Thomson. The Policy cannot be reasonably read to prohibit former employees from disputing payments after they are no longer employed and no longer have access to their managers or company policies and forms.

Roche argues that Thomson admitted that he should have raised concerns about the lack of KSOs at the beginning of the year. Setting aside the fact that no Policy provision required Thomson to do that, Roche ignores the evidence that Thomson *did* do this, at least with respect to the 2022

ICP. Prior to his retirement, Thomson met with DiNizo via Zoom in approximately March 2022. [Dkt. 86-3 (Ex. C, Thomson Dep. 21:23-22:3)]. Thomson's purpose of the call was to communicate that, for five years (including 2022), Fowler did not provide Thomson with specific and measurable KSOs. [Dkt. 86-3 (Ex. C, Thomson Dep. 26:10-27:9)]. Thomson's communications with Fowler and DiNizo in March 2022 about their past failure to develop KSOs put them on reasonable notice about the need for KSOs in the coming year. [Dkt. 86-3 (Ex. C, Thomson Dep. 21:23-22:11, 43:22-44:8, 45:2-10, 96:21-97:6, 98:2-99:7; Dkt. 83-13 (Fowler Dep. Ex. 20, March 2022 Emails)]. At a minimum, genuine issues of fact exist that Thomson did raise with Fowler and DiNizo concerns about Fowler's failure to provide Thomson with timely and proper KSOs, which denied Thomson the opportunity to maximize his incentive payout.

### 4. Indiana Wage Payment Act.

Finally, Thomson brings claims under the Indiana Wage Payment Act (Count VI), which are based on a statutory right, not a contractual right. The Indiana Wage Payment Act requires employers to pay employees all wages earned on a timely basis. Ind. Code § 22-2-5-1. Employees' rights to their wages do not depend on the existence of any contract. Roche's characterization of RDC-107 as an "employee handbook" has no effect, one way or another, on Thomson's rights under the Wage Payment Act. Roche generally avers that summary judgment should be granted on "all claims," but makes no argument as to why it is specifically entitled to summary judgment on Thomson's Wage Payment Act claim, and Roche cites no cases that involve statutory claims for payment of wages. *See Orr*, 689 N.E.2d at 717; *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 888 (Ind. Ct. App. 2007); *Cmty. Found. of Northwest Ind., Inc. v. Miranda*, 120 N.E.3d 1090, 1096 (Ind. Ct. App. 2019); *Alley v. Penguin Random House*, 62 F.4th 358, 360 (7th Cir. 2023); *Mart v. Forest River, Inc.*, 854 F. Supp.2d 577, 583 (N.D. Ind. 2012). Roche is not entitled to summary

judgment on any claims, and certainly not entitled to summary judgment on Thomson's claim under the Wage Payment Act.

Even if the Court were to find that RDC-107's exhaustion procedures applied to Thomson each year (2020-2022), and even if there were undisputed evidence that Thomson did not properly exhaust all internal remedies required of him each year (which Thomson disputes), Roche would still not be entitled to summary judgment on Thomson's Indiana Wage Payment Act claim. Employees have the right to sue their employers in court for failure to pay them wages, or pay them in a timely manner. Ind. Code § 22-2-5-2. The Indiana Wage Payment Statute does not require employees to exhaust any remedies prior to filing suit. *E&L Rental Equip. v. Gifford*, 744 N.E.2d 1007 (Ind. Ct. App. 2001).[4] An employer cannot foreclose a statutory wage claim through an internal policy requiring an employee to raise disputes in a certain way or within a certain time frame. Roche cites no authority for its position that an employer may impose internal exhaustion requirements on employees for challenging wage disputes, and such a position would conflict with the public policy of Indiana. The Court should deny summary judgment on Thomson's claim under the Indiana Wage Payment Act.

**C. The Court's Ruling on Roche's Motion for Judgment on the Pleadings Does Not Foreclose Thomson's Contractual Claims for 2020-2022.**

In its recent Order on Roche's Motion for Judgment on the Pleadings, the Court held that a two-year statute of limitations (Ind. Code § 34-11-2-1) applies to Thomson's claims, rather than

---

[4] The Indiana Wage Claims Act, by contrast, does contain exhaustion requirements before a suit may be filed. *See* Ind. Code § 22-2-9-1 *et seq*. However, Thomson's claim is governed by the Wage Payment Act, not the Wage Claims Act, because he voluntarily retired. *See St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002) ("The Wage Claims Statute references employees who have been separated from work by their employer…. By contrast, the Wage Payment Statute references current employees and those who have voluntarily left employment[.]"). To the extent that Thomson was required to comply with the Wage Claims Act, he did so by requesting and obtaining letters of referral from the Indiana Department of Labor and Attorney General. [Dkt. 49 at 14].

a ten-year statute of limitations (Ind. Code § 34-11-2-11). [Dkt. 72 at 7-9]. Thus, Thomson's claims

under the 2020-2022 ICPs survived, but his claims under the 2018 and 2019 ICPs did not. *Id.* at 9.

The Court reasoned that "Thomson's claims arise out of an employment relationship – not a written

employment contract[.]" *Id.* at 8. The Court's ruling does not preclude Thomson from bringing

breach of contract claims based on the ICPs within the two-year statute of limitations.[5] *See Knutson*

*v. UGS Corp.*, 526 F.3d 339, 340 (7th Cir. 2008) ("Although the plaintiff did not have a written

*employment* contract, his entitlement to commissions was based on a written compensation

plan…"). The Seventh Circuit's reasoning in *Knutson* suggests that an employee may enforce the

terms of a written compensation plan arising out of an employment relationship, "making it much

like a case in which the contract sued upon is partly written and partly oral." *Id.* The same logic

applies to Thomson's claims, which seek compensation under the ICPs, as long as they are brought

within the two-year statute of limitations.

## VI.    CONCLUSION

     For the foregoing reasons, Thomson respectfully requests that this Court deny Roche's

Motion for Summary Judgment in its entirety.

                       Respectfully submitted,

                       */s/ Annavieve C. Conklin*
                       Matthew R. Gutwein (#16414-49)
                       Kathleen A. DeLaney (#18604-49)
                       Annavieve C. Conklin (#33875-32)
                       DELANEY & DELANEY LLC
                       3646 N. Washington Blvd.
                       Indianapolis, IN 46205
                       Phone: (317) 920-0400
                       Fax: (317) 920-0404
                       mgutwein@delaneylaw.net

---

[5] Roche does not make any argument to the contrary on this point, but Thomson is addressing this potential issue out of an abundance of caution.

kathleen@delaneylaw.net
aconklin@delaneylaw.net

*Attorneys for Plaintiff John Thomson*