**IN THE UNITED STATES DISTRICT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JOHN THOMSON, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CASE NO. 1:23-cv-00099-SEB-MG |
| | : | |
| ROCHE DIAGNOSTICS CORPORATION, | : | JUDGE SARA EVANS BARKER |
| | : | |
| | : | MAGISTRATE JUDGE MARIO |
| Defendant. | : | GARCIA |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff John Thomson ("Plaintiff") worked for Defendant Roche Diagnostics Corporation ("Defendant" or "Roche") for over forty years until he retired in January 2023. Plaintiff filed this lawsuit on the eve of his retirement, on December 12, 2022, seeking incentive compensation through a Roche policy, RDC-107, Roche's Incentive Compensation Plan. (Doc. #1-1). On February 14, 2024, this Court granted judgment to Roche on "all claims accruing before December 12, 2020." (Doc. #72, pg. 9). This Court permitted the remaining claims to be reviewed on summary judgment based on a "fully developed factual record." (Doc. #72, pg. 7).

The fully developed factual record, set forth in Defendant's motion, provides that summary judgment should be granted in favor of Roche on all claims for four reasons: (1) RDC-107 is not a contract that Plaintiff can enforce. *Alley v. Penguin Random House*, 62 F.4th 358 (7th Cir. 2023); (2) Roche fully complied with RDC-107 with respect to Plaintiff; (3) Plaintiff failed to exhaust, or even to initiate, his administrative remedies under RDC-107; and (4) the undisputed and

unchallenged facts firmly support the payments Plaintiff received under RDC-107 due to Plaintiff's work performance.

Faced with Plaintiff's deposition testimony that confirms summary judgment, the Response in Opposition (the "Opposition") presents a wide range of arguments. As to work performance, Plaintiff argues that this Court should ignore the facts and assume Plaintiff would have performed better from 2020-2022 had he been given detailed, written expectations. (Doc. #85, pg. 8 ("Because Roche did not provide Thomson with any KSOs to attempt to achieve or exceed, Roche deprived Thomson of opportunities to maximize his ICP payouts. . . ."). As to Plaintiff's failure to raise these issues through RDC-107 or Roche's complaint procedures, Plaintiff misrepresents deposition testimony to try to manufacture a factual dispute. (Doc. #85, pg. 4). Finally, as to the lack of an enforceable contract, the Opposition again misstates the record.

Plaintiff, as the non-moving party at summary judgment, has the burden of presenting the Court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Plaintiff's Opposition wholly fails to satisfy this burden based on its misstatements of the summary judgment record. Accordingly, because the fully developed factual record confirms that summary judgment should be entered in favor of Roche on all claims asserted by Plaintiff, summary judgment should be granted, and this matter terminated.

## II.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

A complete statement of the undisputed and material facts is set forth in Roche's Motion for Summary Judgment and it will not be restated herein. However, this Reply Memorandum will highlight the material facts and rebut the purported factual disputes set forth in the Opposition. Any additional factual citations are addressed in Defendant's supplemental appendix.

**A.      Plaintiff Admits That He Was Familiar With Roche's Complaint Procedure, But Never Raised These Issues Through That Procedure.**

As a long-term Roche employee, Plaintiff admits that he was aware of Roche's complaint procedure.  (Appx. pp. 14-15, Dep. Plaintiff at 17-18).  Relevant to this Motion, Plaintiff admits that he never went to Roche's Human Resources Department to discuss the KSO payments or RDC-107.  (Appx. p. 20, Dep. Plaintiff at 32).  Plaintiff's timely dispute arguments run contrary to his deposition testimony.  (Opposition at 2).

**B.      Roche's Incentive Compensation Plan Has Two Aspects.**

As a sales employee, Plaintiff was paid a base salary.  (Appx. p. 9, Dep. Plaintiff at 12).  In addition, sales employees are also eligible for group and individual incentives under Roche's incentive plan.  (Appx. p. 10, Dep. Plaintiff at 13).

In his deposition, Plaintiff made clear that RDC-107 is the "actual plan policy" that lays out the eligibility and guidelines for the group and individual incentives.  (Appx. p. 26-27, and 99, Dep. Plaintiff at 38-39 and Ex. 2[1]).  RDC-107 is a lengthy policy that sets forth the basic guidelines for the group and incentive compensation.  (Appx. pp. 44-48, Dep. Plaintiff at Exs. 1, 3, 5, 7, 9).  Plaintiff admits that he reviewed RDC-107 on an annual basis.  (Appx. pp. 27, 44-48, Dep. Plaintiff at 39 and Exs. 1, 3, 5, 7, and 9).

The Key Sales Objectives ("KSO") is the bonus program for Plaintiff and his team that was "based" on RDC-107.  (Appx. p. 26-27, Dep. Plaintiff at 38-39).  The KSO is a much shorter document that is focused primarily on sales numbers.  (Appx. pp. 99-102, Dep. Plaintiff at Ex. 2, 4, 6, 8[2]).  For example, on January 6, 2020, RDC-107 was updated and published.  (Appx. p. 46,

---

[1] Plaintiff's Exhibit 2 was filed as ECF 50-3.  A supplemental appendix containing this document will be filed on April 4, 2024.

[2] Plaintiff's Exhibits 4, 6, and 8 were sealed by this Court and are on the docket at ECF Nos. 30, 37, 48, and 50.  A supplemental appendix containing these documents will be filed on April 4, 2024.

Dep. Plaintiff at Ex. 5, pg. 1). Section 1.0 set forth the scope of RDC-107 and the type of employees who were eligible for RDC-107 in 2020. (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 1.0). Thereafter, once Plaintiff was deemed eligible for incentive compensation in 2020, the KSO was published. (Appx. p. 101, Dep. Plaintiff at Ex. 6).

### C.   <u>Plaintiff Misstates The Record On The Alleged Contract.</u>

The KSO is based off RDC-107 (Appx. p. 26-27, Dep. Plaintiff at 38-39), but Plaintiff admits that RDC-107 is not a contract. (Opposition at 1 "Thomson does not seek to enforce the related Policy, RDC-107. . ."). Plaintiff falsely alleges that Roche admits that the KSO, a document issued pursuant to RDC-107, are somehow contracts. (Opposition at 1).

Defendant's answer includes the following affirmative defense: "Plaintiff's claims fail because Plaintiff cannot prove the existence of a contract between Plaintiff and Defendant with respect to Plaintiff's claims." (Doc. #53, pg. 15). Paragraph 11 of the Answer verifies that Plaintiff was eligible for incentive compensation pursuant to RDC-107. (Doc. #53). In Paragraphs 48, 61, 75, 90, and 105, Plaintiff alleges that he was employed by Roche pursuant to annual employment contracts. (Doc. #49). Defendant denied these paragraphs. (Doc. #53).

The Opposition focuses on Defendant's answer to Paragraphs 49, 62, 76, 91, and 106 – the paragraphs immediately following the alleged annual contract. (Doc. #49). The allegation is that the annual KSO is "incorporated into Thomson's employment contract." (Doc. #49). Initially, as set forth above, in the preceding paragraph, Defendant denied the existence of an employment contract that is referenced in this Paragraph. (Doc. #53). However, due to the fact that Plaintiff was eligible for the incentive compensation under RDC-107 from 2018 through 2022 as admitted by Roche in Paragraph 11, Roche answered these paragraphs: "Defendant admits only that the 2018 ICP was part of Plaintiff's employment agreement with Roche, but denies all other

4

allegations contained in paragraph 49 of the Complaint." (Doc. #53). The answer simply verified that Plaintiff's position made him eligible for incentive compensation under RDC-107. Defendant's denials make clear that Roche has never admitted that Plaintiff has any contract rights against Roche.

      **D.**      <u>**The KSO Were Developed Pursuant To RDC-107.**</u>

The Opposition alleges that the KSO were not developed. (Opposition at 2). The Opposition misstates the record and Plaintiff's argument should be rejected. (Opposition at 2).

Initially, the development of the KSO is driven by RDC-107, not the drafter of Plaintiff's KSO. (Appx. p. 46, Dep. Plaintiff at Ex. 5). For example, in 2020, RDC-107 included Section 10.5 that clearly provides that RDC-107 governs incentive compensation and it controls if any "company policy or any offer letter" conflict with RDC-107. (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 10.6). Section 2.0 addresses the incentive plan design principles. (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 2). Section 8.0 sets forth the individual goals. (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 2). RDC-107 does not require a "sign-off" as alleged by Plaintiff. (Opposition at 2). The goals simply need to be "approved by leadership prior to payout." (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 8). More importantly, RDC-107 simply advises management to set individual goals "through a goal-setting process to compensate employees for achieving strategic objectives that position the business for long term growth." (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 8). These same provisions of RDC-107 controlled in 2021 and 2022. (Appx. pp. 47 and 48, Dep. Plaintiff at Exs. 7 and 9). Needless to say, Plaintiff's reliance on the KSO runs directly contrary to Section 10.5 of RDC-107.

DiNizo and Fowler fully complied with RDC-107. DiNizo testified that he would discuss and set business plans with each of his direct reports, including Jason Fowler. (Appx. p. 82, Dep.

DiNizo at 28).  The KSO would then be developed from the business plan.  (Appx. p. 82, Dep. DiNizo at 28).  DiNizo's direct reports would then roll out the KSO to their teams.  (Appx. p. 83-84, Dep. DiNizo at 29-30).  Fowler testified that he would meet weekly with his team, including Plaintiff, through group meetings and one-on-one meetings to roll out and discuss the KSO throughout the year.  (Appx. p. 61, Dep. Fowler at 19).   Fowler addressed the KSO in the team meetings and then focused on the employee's work performance in the weekly one-on-one meeting.  (Appx. p. 61 and 103, Dep. Fowler at 19-20[3]).

As to Plaintiff, over the last thirty-five years of his employment, Plaintiff was a sales employee who was eligible for incentive compensation.  (Appx. p. 9, Dep. Plaintiff at 12).  Plaintiff admits that he was very familiar with Roche's payment policies because he was eligible for group and incentive compensation under the ICP since 1997.  (Appx. pp. 12-14, Dep. Plaintiff at 14 and 15-17).  Plaintiff testified that his incentive compensation remained relatively unchanged over these years:

> Q.  And I guess I would say that is a change, but my question to you would be although the percentages might be changed and the revenue projections might be changed and the revenue projections might be changed as to the group points and those types of things, obviously, they are increasing or decreasing based on the market and based on Roche's sales.  But in general, the criteria for you to earn your compensation weren't drastically changing over the course of those 20 years that you were on the incentive compensation plan; right?
>
> A.   Again, it depends on how you define "drastically," but in general, I agree with you.

(Appx. pp. 24-26, Dep. Plaintiff at 37-38).

---

[3] Page 20 of Jason Fowler's deposition was filed with this court as ECF No. 83-1, p. 20.  A supplemental appendix containing this document will be filed on April 4, 2024.

The Opposition's cites to the testimony of Fowler and DeNizo should be rejected. The Opposition first cites Exhibit 20 to Fowler's deposition that is an email communication that **includes the 2021 KSO** and then concludes with Plaintiff's argument that he was nonetheless not presented with KSO. (Appx. pp. 106-107, Dep. Fowler at Ex. 20[4]) (emphasis added). The Opposition next cites Fowler's transcript that confirms that his manager reviewed the KSO, but that he did not recall them getting "signed off." (Appx. pp. 104-105, Dep. Fowler at 21-22[5]). Similarly, the DiNizo transcript cites only verify the Exhibit 20 KSO (Appx. pp. 109-110, Dep. DiNizo at 48-49[6]) and the fact that DiNizo spoke to Fowler and his team about rolling out the KSO (Appx, p. 85 and 108, Dep. DiNizo at 38[7]-39). Accordingly, Plaintiff's reliance on the Fowler and DiNizo transcript cites are blatant misstatements of the record.

### E.    Plaintiff Failed To Raise These Issues Through RDC-107.

Plaintiff next argues that he timely disputed the 2020 and 2021 incentive compensation payments. (Opposition at 2-3). Plaintiff is again misstating the record.

From 2018 through 2022, RDC-107 made clear that employees were responsible for reviewing their commission and bonus payments. (Appx. pp. 44-48, Dep. Plaintiff at Exs. 1, 3, 5, 7, and 9). In 2020, Section 4.0 of RDC-107 provided:

> 4.0 Incentive Plan Payment
>
> Employees on ICP are responsible for reviewing and confirming the accuracy of their commission and bonus payments. Within 60 days after the final calendar year-end payout, an employee can bring

---

[4] Exhibit 20 to Jason Fowler's deposition was filed with this Court as ECF No. 83-13. A supplemental appendix containing this document will be filed on April 4, 2024.

[5] Pages 21-22 of Jason Fowler's deposition were filed with this Court as ECF No. 83-1, pages 21-22. A supplemental appendix containing these documents will be filed on April 4, 2024.

[6] Pages 48-49 of Ron DeNizo's deposition were filed with this Court as ECF No. 84-1, pages 48-49. A supplemental appendix containing these documents will be filed on April 4, 2024.

[7] Page 38 of Ron DeNizo's deposition was filed with this Court as ECF No. 84-1, page 38. A supplemental appendix containing this document will be filed on April 4, 2024.

> forward, in writing, any discrepancies in calculations for
> consideration.  After the 60 day period following the calendar year
> final payout, if no issues have been raised by the employee or Roche,
> the calculation and payment are considered final.

(Appx. p. 45, Dep. Plaintiff at Ex. 5, Section 4.0).  This same section was included in the 2021 and

2022 versions of RDC-107, but the challenge period was reduced to 45 days.  (Appx. p. 47, Dep.

Plaintiff at Ex. 7, Section 4.0); (Appx. p. 48, Dep. Plaintiff at Ex. 9, Section 4).

In 2020, Section 10.6 was added to RDC-107 that addressed the resolution of disputes:

> 10.6 Dispute Resolution
>
> Any disputes regarding whether an employee was appropriately
> compensated in accordance with this policy shall be submitted to
> such employee's direct manager or supervisor, who shall resolve
> any such disputes, based on such information as the manager or
> supervisor deems appropriate, as determined in his or her discretion.

(Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 10.6).

In 2021, the dispute resolution was expanded to include an exception process:

> 10.6 Dispute Resolution
>
> Any disputes regarding whether an employee was appropriately
> compensated in accordance with this policy shall be submitted to
> such employee's direct manager or supervisor and through the
> Payout Exception Process, which shall resolve disputes involving
> calculations or assignment-of-credit errors in their reasonable
> discretion.  Disputes involving ICP interpretation that could affect
> compensation of other employees will be resolved by the Payout
> Exception Process, applying reasonable discretion.

(Appx. p. 47, Dep. Plaintiff at Ex. 7, Section 10.6).  This section was also included in the 2022

version of RDC-107.  (Appx. p. 48, Dep. Plaintiff at Ex. 9, Section 10.4).

Plaintiff filed this lawsuit alleging that his KSO payments were not proper.  (Opposition at

5).  However, Plaintiff admits that he did not submit a written complaint regarding the KSO

payments in 2019, 2020, 2021, and 2022.  (Appx. p. 29-30, Dep. Plaintiff at 42-43).  In addition,

DiNizo does not recall any of the employees that he managed coming to him from 2018 through 2022 to discuss KSO payments.  (Appx. p. 89, Dep. DiNizo at 53).  In Plaintiff's words, he "absolutely" should have raised this issue prior to the lawsuit.  (Appx. p. 42, Dep. Plaintiff at 82)

**F.     Plaintiff Is Not Excused From Filing An Exception In 2022 Plan By Filing A Lawsuit.**

The Opposition next argues that Plaintiff should be excused from submitting an internal complaint under RDC-107 because he was no longer a Roche employee.  (Opposition at 3).  In fact, Plaintiff set his retirement date based on RDC-107 in order to qualify for the incentive compensation:  "Employees must be employed with Roche on the last day of the measurement period to qualify for a payout."  (Appx. p. 48, Dep. Plaintiff at Ex. 9, Section 8.0).  Plaintiff received a KSO payment in 2022. (Appx. p. 111, Dep. Plaintiff at 56[8]).  Indeed, Plaintiff filed this lawsuit before he retired from his Roche employment.  (Doc. #1-1).  When represented by counsel, one would expect that Plaintiff had every opportunity to thoroughly review RDC-107 and to file the exception required under the 2022 version of RDC-107.  (Appx. p. 48, Dep. Plaintiff at Ex. 9, Section 10.4).  However, the reason why such an internal appeal was not filed is obvious - such a filing would run contrary to Plaintiff's prior conduct under RDC-107.

**G.     Plaintiff Does Not Dispute His Performance Compared To His Co-Workers.**

The Opposition does not challenge Roche's evidence regarding Plaintiff's work performance compared to his co-workers. (Opposition at 5).  Rather, Plaintiff alleges that he would have performed at a higher standard had he been provided with adequate KSO.  (Opposition at 5).  However, Plaintiff admitted that he knew what it took to excel at Roche in his position.  (Appx. p. 32, Dep. Plaintiff at 62).  In Plaintiff's words, "I knew how to be a good employee."  (Appx. p. 33,

---

[8] Defendant is filing a supplemental appendix that will include this document. A supplemental appendix containing this document will be filed on April 4, 2024.

Dep. Plaintiff at 63).  Accordingly, Plaintiff's attempt to request this Court to ignore his work performance from 2020 through 2022 should be rejected.

## III.   LAW AND ARGUMENT

The alleged factual disputes set forth in the Opposition have no basis in fact.  Accordingly, as set forth below, Plaintiff has failed to meet his summary judgment burden and this matter should be terminated.  *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### A.   Plaintiff's Claims Fail Because He Has No Contractual Rights To KSO Payments.

Based on the Seventh Circuit's decision in *Alley v. Penguin Random House*, 62 F.4th 358, 363-364 (7th Cir. 2023), Plaintiff has abandoned his claim that RDC-107 is a contract.  (Opposition at 9-10).  Plaintiff now argues that the KSO is a contract.  (Opposition at 9-10).

The admissible facts do not support Plaintiff's position.  Plaintiff admitted that the KSO are "based" on RDC-107.  (Appx. p. 26-27, Dep. Plaintiff at 38-39).  In fact, Section 10.5 clearly provides that RDC-107 governs incentive compensation and it controls if any "company policy or any offer letter" conflict with RDC-107.  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 10.6).  Moreover, Defendant's answer includes the following affirmative defense:  "Plaintiff's claims fail because Plaintiff cannot prove the existence of a contract between Plaintiff and Defendant with respect to Plaintiff's claims."  (Doc. #53, pg. 15).  In Paragraph 48, 61, 75, 90, and 105, Plaintiff alleges that he was employed by Roche pursuant to annual employment contracts.  (Doc. #49).  Defendant denied these paragraphs.  (Doc. #53).  Accordingly, based on the *Alley* decision and Plaintiff's admission on RDC-107, this matter should be terminated.

### B.   Roche Fully Complied With RDC-107 And The KSO.

Plaintiff next argues that Roche failed to provide KSO's.  (Opposition at 10).  As set forth above, Plaintiff's factual arguments are flawed and should be rejected.

Plaintiff's breach of contract claim is based on the KSO – a document issued pursuant to RDC-107.  The development of the KSO is driven by RDC-107, not the drafter of Plaintiff's KSO.  (Appx. p. 46, Dep. Plaintiff at Ex. 5).  For example, in 2020, RDC-107 included Section 10.5 that clearly provides that RDC-107 governs incentive compensation and it controls if any "company policy or any offer letter" conflict with RDC-107.  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 10.6).  Section 2.0 addresses the incentive plan design principles.  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 2).  Section 8.0 sets forth the individual goals.  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 2).  RDC-107 does not require a "sign-off" as alleged by Plaintiff.  (Opposition at 2).  The goals simply need to be "approved by leadership prior to payout."  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 8).  More importantly, RDC-107 simply advise management to set individual goals "through a goal-setting process to compensate employees for achieving strategic objectives that position the business for long-term growth."  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 8).  These same provisions of RDC-107 controlled in 2021 and 2022.  (Appx. pp. 47-48, Dep. Plaintiff at Exs. 7 and 9).  Needless to say, Plaintiff's reliance on the KSO runs directly contrary to Section 10.5 of RDC-107.

Ron DiNizo testified that he would discuss and set business plans with each of his direct reports, including Jason Fowler.  (Appx. p. 82, Dep. DeNizo at 28).  The KSO would then be developed from the business plan.  (Appx. p. 82, Dep. DiNizo at 28).  Fowler testified that he would meet weekly with his team through group meetings and one-on-one meetings to roll out and discuss the KSO throughout the year.  (Appx. p. 61, Dep. Fowler at 19).

Plaintiff signed off on the KSO in Roche's learning portal every year.  (Appx. pp. 21-22, Dep. Plaintiff at 33-34).  Thereafter, Fowler addressed the KSO in the team meetings and then focused on the employee's work performance in the weekly one-on-one meeting.  (Appx. pp. 61

11

and 103, Dep. Fowler at 19-20).  In a mid-year meeting, Plaintiff was paid a portion of his KSO. (Appx. pp. 22-23, Dep. Plaintiff at 34-35).  In this mid-year meeting, Plaintiff "would reach out to understand why it was paid out in such a way."  (Appx. pp. 22-23, Dep. Plaintiff at 34-35).  Finally, Plaintiff would ask the same questions when the final KSO payout was made.  (Appx. pp. 23-24, Dep. Plaintiff at 35-36). Fowler and DiNizo fully complied with RDC-107 and Plaintiff's attempt to add provisions to RDC-107 through his KSO should be rejected.

### C.   If There Is A Contract, Plaintiff Failed To Timely And Properly Raise His Disputes.

If, *arguendo*, RDC-107 is construed as a unilateral contract, Plaintiff's claims still fail because Plaintiff admits that he failed to utilize the complaint procedures available to him under RDC-107.  *Orr v. Westminster Village North, Inc.*, 689 N.E.2d 712, 721-722 (Ind. 1997).  In 2018, Plaintiff submitted a written request to change his KSO payment.  (Appx. p. 29, Dep. Plaintiff at 42); (Appx. p. 75, Dep. Fowler at Ex. 4).  It is undisputed that Fowler corrected the 2018 issue to Plaintiff's approval.  (Appx. p. 75, Dep. Fowler at Ex. 4); (Appx. p. 30, Dep. Plaintiff at 43). Plaintiff admits that he did not submit a written complaint regarding the KSO payments in 2019, 2020, 2021, and 2022.  (Appx. pp. 29-30, Dep. Plaintiff at 42-43).  Plaintiff admits that he never went to Roche's Human Resources Department to discuss the KSO payments or the ICP plan. (Appx. p. 20, Dep. Plaintiff at 32).

RDC-107 required written complaints regarding "any discrepancies in calculations. . . ." (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 4.0); (Appx. p. 47, Dep. Plaintiff at Ex. 7, Section 4.0); (Appx. p. 48, Dep. Plaintiff at Ex. 9, Section 4).  Moreover, in 2021 and 2022, Section 10.6 stated: "**Any disputes regarding whether an employee was appropriately compensated in accordance with this policy** shall be submitted to such employee's direct manager or supervisor and through the Payout Exception Process, which shall resolve disputes involving calculations or

assignment-of-credit errors in their reasonable discretion."  (Appx. p. 47, Dep. Plaintiff at Ex. 7,

Section 10.6); (Appx. p. 48, Dep. Plaintiff at Ex. 9, Section 10.4) (emphasis added).

Plaintiff failed to follow the grievance procedure in RDC-107.  Plaintiff admits that the

time to raise the issue of wanting a more specific KSO was early in the year when the ICP was

rolled out to employees.  (Appx. p. 42, Dep. Plaintiff at 82).  In Plaintiff's words, he "absolutely"

should have raised this issue prior to the lawsuit.  (Appx. p. 42, Dep. Plaintiff at 82).  Moreover,

Plaintiff admits that the KSO remained consistent over the years.  (Appx. pp. 25-26, Dep. Plaintiff

at 37-38).  Accordingly, summary judgment should be granted in favor of Roche on all claims

asserted regardless of whether a contract can be proven.  *Orr*, 689 N.E.2d at 721-722.

**D.**     **The Undisputed Facts Do Not Support Plaintiff's Claim For A Higher KSO Payment.**

If this Court were to permit Plaintiff to rely on a unilateral contract and to ignore the

complaint procedures that were available to him under RDC-107, Plaintiff's claims fail on the

merits.  Plaintiff does not allege that he performed at a higher KSO percentage.  (Appx. p. 6, Dep.

Plaintiff at 9).  Rather, Plaintiff is asking this Court to pay him the maximum amount under the

KSO not due to his actual performance, but due to his claim that had he had written KSO provided

to him, that he would have performed at a higher standard.  (Appx. p. 7, Dep. Plaintiff at 10).

RDC-107 simply advises management to set individual goals "through a goal-setting

process to compensate employees for achieving strategic objectives that position the business for

long term growth."  (Appx. p. 46, Dep. Plaintiff at Ex. 5, Section 8).  DiNizo and Fowler followed

RDC-107 by paying out the KSO in relation to the work performance of the sales team.  Plaintiff

does not dispute that some of his co-workers were rewarded in 2020, 2021 and 2022 for

contributions above his own.  Moreover, Plaintiff does not dispute that his own work performance

from 2020 through 2022 was average.  Accordingly, Plaintiff has provided this Court with no basis

to alter RDC-107 and compensate Plaintiff with additional incentive compensation despite the fact that Plaintiff concedes some of his co-workers out-performed him in 2020, 2021, and 2022.  Based on Plaintiff's failure to challenge the work performance of him and his co-workers, summary judgment should be granted on all claims in favor of Roche.

## VI.    <u>CONCLUSION</u>

Summary judgment should be granted in favor of Roche on all claims asserted by Plaintiff for four independent reasons. The first reason why summary judgment should be granted in favor of Roche is because Indiana law does not support Plaintiff's argument that RDC-107 created a unilateral contract.  *Orr*, 689 N.E.2d at 719-720; *Alley*, 62 F.4[th] at 363-364.  The second reason why summary judgment should be granted in favor of Roche is because Roche fully complied with RDC-107 with respect to Plaintiff.  The third reason summary judgment should be granted in favor of Roche is because Plaintiff failed to exhaust his administrative remedies under RDC-107.  *Orr*, 689 N.E.2d at 721-722.  Finally, summary judgment should be granted in favor of Roche on all claims because the undisputed facts provide that Plaintiff was compensated under the KSO at a level that exceeded his work performance from 2018 through 2022.  (Appx. p. 96, Dep. DiNizo at 94).  Accordingly, this Court should grant Roche's motion, in its entirety, enter judgment in favor of Roche, and terminate this matter.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Gordon Rees Scully Mansukhani, LLP
600 Superior Ave., East, Suite 1300
Cleveland, OH 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
Email: dcampbell@grsm.com

Hunter T. Edmonds (#37701-29)
Gordon Rees Scully Mansukhani, LLP
600 E. 96th Street, Suite 501
Indianapolis, IN 46240
T: (317) 713-0905
        hedmonds@grsm.com

*Attorneys for Defendant Roche Diagnostic*
*Corporation*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2024, a copy of the foregoing pleading was filed using the

Court's CM/ECF system, which will automatically send e-mail notification of such filing to all

attorneys of record.


/s/ David A. Campbell
David A. Campbell